OPINION OF THE COURT
Glenn R Morton, J.
The defendant-appellant was convicted of the offense of operating a motor vehicle while impaired in violation of subdivision 1 of section 1192 of the Vehicle and Traffic Law on February 28, 1983, in the Town Justice Court for the Town of LeRoy. The defendant-appellant now appeals the judgment of conviction, as a matter of law, contending that the court improperly denied his motion to suppress evidence based upon an illegal search of his car and person.
Principally, the defendant-appellant contends that the routine stopping of his vehicle by police at a roadblock without any specific reason therefore violates his Fourth Amendment constitutional right prohibiting unreasonable searches and seizures. Except as noted, the facts below are not materially disputed, and it appears that:
As part of a program designed to prevent drunken driving, the Genesee County Sheriff administratively adopted a policy of law enforcement requiring the establishment of roadblocks throughout the county at periodic intervals; and promulgated certain written guidelines for the implementation thereof. In conjunction therewith, the criminal division of the Sheriff’s department, in March, 1982, com *732 menced conducting roadblocks once each month between the hours of 12:00 a.m. (midnight) and 3:00 a.m. at various predetermined points in the county. On each occasion the roadblock would be set up with certain devices to alert motorists and, after being conducted for 20 to 30 minutes, would move on to one of the other sites previously selected.
During the early morning hours of September 25, 1982, the Sheriff’s department, after conducting similar procedures in the Towns of Byron and Bergen, set up the third roadblock of the evening on Route 5 near its intersection with the Asbury Road in the Town of LeRoy at approximately 1:45 a.m. Warning signs were set up on the shoulder of the road 300 feet in advance on either side of the checkpoint, with two auxiliary police vehicles exhibiting flashing lights and shining their headlights on them to alert motorists of the impending stop. Additionally, flares were placed in the center of the road in the vicinity of the signs; and in the center of the checkpoint area, there were two other unmarked and one marked Sheriff’s vehicles. The checkpoint itself was operated by six regular members of the Sheriff’s department and four volunteer special deputies (auxiliary police), who stopped all vehicles approaching from either direction.
It also appears under the facts here as it tangentially relates to the over-all effect, that two additional patrol cars were stationed on the peripheral areas to follow any vehicles who elected to turn around or not proceed through the checkpoint and observe them for possible violations.
Around 2:00 a.m. the defendant’s vehicle approached from the east and was directed to the side of the road in the checkpoint area by the special deputies. The defendant’s vehicle was then approached by Chief Deputy Gary Maha, with a flashlight, and he was requested to produce his license, registration and insurance. At the time, the officer observed the defendant fumble with his wallet a “little bit”, that there was a strong odor of alcohol and his eyes were watery and bloodshot. The defendant was also asked if he had been drinking, and responded that he had just left a bar and grill. The defendant was asked to step out of the car, was observed to be unstable and, after being requested, could not successfully perform two co-ordination *733 tests. The defendant was administered an alco-sensor test, given certain warnings as to his constitutional and statutory rights and requested to submit to a chemical test.
It is not substantially controverted that after the stop the officer had sufficient probable cause to arrest the defendant for a violation of section 1192 of the Vehicle and Traffic Law. The main issue raised here concerns the validity of the initial stop and the authority of the police to arbitrarily interfere with the movement of the vehicles on public highways.
Essentially, an automobile is more than a convenience. It has been recognized that in our society, automobile travel is a basic, pervasive and often necessary mode of transportation in which people perceive a greater sense of security and privacy than they do in exposing themselves to walking or other forms of transportation. Further, that random stops or uncontrolled interference with movement on the highways involves not only a physical interference with the freedom of movement to the motoring public, but often creates a psychological interference involving substantial fright, anxiety or annoyance (see Delaware v Prouse, 440 US 648).
Given these circumstances, our courts have imposed constraints on the stopping of vehicles on highways to avoid abuse and to enforce citizens’ constitutional rights to privacy and to be free from unreasonable police seizures or interference guaranteed by the Fourth Amendment (Delaware v Prouse, supra; United States v Martinez-Fuerte, 428 US 543; United States v Brignoni-Ponce, 422 US 873; United States v Ortiz, 422 US 891; Almeida-Sanchez v United States, 413 US 266; People v Ingle, 36 NY2d 413). In each instance, the test employed to measure the permissibility of a particular law enforcement practice is to balance the extent of the interference to the individual’s Fourth Amendment right with the benefits it provides to promoting some legitimate governmental interest (see United States v Ramsey, 431 US 606).
It has not been seriously questioned here that the State of New York has a genuine interest in preventing drunken driving; and the administrative guidelines adopted by the Sheriff appear for the most part to track the policy of the *734 Governor’s Alcohol and Highway Safety Task Force Report of October 19,1981. Obviously the practice developed here by its nature does cause some interference with automobile travel throughout the county at times when motorist concern is at its greatest. However, it also correlates with times of highest incidents of drunken driving (see, e.g., Nat Highway Traffic Safety Admin [US Dept of Transp] Fatal Accident Reporting System, 1980, DOT-HS-805-953, Oct., 1981; 1973 US Nat Roadside Survey DOT-HS-801-241); and to the extent litigated below, it appears that no substantial challenge has been made that the sites selected in the survey did not have a rational relationship to the drinking-driving problem.
Certain aspects of the guidelines under consideration here do create a greater degree of intrusion on motorists in that they provide, not only for stopping of the vehicle, but also for requesting that the operator alight from the car and perform certain co-ordination tests in the discretion of the officer. No particular issue was raised on this aspect, and it appears that the guidelines themselves limit the use thereof to circumstances where there is also present probable cause to believe that the operator is intoxicated. Given this express limitation to the higher alcohol-related criminal offense involving intoxication (Vehicle and Traffic Law, § 1192, subd 3), the possibility of abuse is minimized and the additional intrusion constitutionally recognized under traditional concepts (Pennsylvania v Mimms, 434 US 106; People v Diaz, 41 NY2d 876; cf. People v Marsh, 20 NY2d 98; People v Troiano, 35 NY2d 476).
It also is apparent here that the checkpoints were mobile in nature and were purposely designed to be nonstationary. However, under the facts of this case the chéckpoints are more substantial and do not equate to the sporadic roving-type police stop previously condemned (Delaware v Prouse, supra; United States v Brignoni-Ponce, supra).
Specifically in this regard it appears that the main evil the courts seek to prevent is that individuals’ rights not be subject to unbridled or standardless discretion of a police officer in the “field” (Delaware v Prouse, supra, at pp 655-656, 660-662). The record here shows that the guidelines are quite comprehensive and substantially circumscribed *735 the field officer’s discretion as to the manner of stopping vehicles and as to what action can afterwards be taken.* No reason exists to doubt that the subsequent oral modification shortening the advance warning distance was approved and adopted by the Sheriff; and the guidelines, even as modified, appear sufficient to provide visible assurance to motorists-that duly constituted law enforcement authorities are conducting roadblocks in order to allay feelings of fright or annoyance.
It is noted that the actual arresting officer here was the chief criminal deputy for the Sheriff’s department. Such a direct participation by high level administrative personnel, charged with assuring that field officers comply with the guidelines, is a factor to be weighed in determining whether a genuine standard exists to protect the public. However, in the absence of any proof below as to any abuse or other deviation by the supervising officer, it would appear that it simply is not a significant factor under the circumstances here. Similarly, the defendant-appellant has sought to introduce a national newspaper article tending to reflect that the Sheriff’s participation was more directly field oriented rather than administrative. However, the article itself is dehors the record and subsequent to the events in question. As such, it is considered not properly before this court for purposes of this appeal.
Subject to the foregoing and considering on its face that the government has a greater interest in identifying the drunken driver for community protection, it would appear that the minimal intrusion practiced here by use of spot checkpoints is reasonable. Accordingly, the judgment of conviction is affirmed.
The foregoing constitutes the decision and certificate of this court remitting the matter to the local criminal court for further disposition pursuant to CPL 460.50 (subd 5).

 At the hearing the trial court failed to attach any weight to the defendant’s proof that certain vehicles passed through without being checked, and found that the officers uniformly stopped vehicles in a nondiscriminatory manner. Considering that the trial court was in a better position to evaluate the evidence firsthand (People v Cohen, 223 NY 406), .and the absence of some manifest improbability (People v Stroman, 83 AD2d 370), it is determined that this finding should not be disturbed.