THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JIMMY L. BARTLEY, Defendant-Appellee.

Third District   No. 3—83—0573

Opinion filed June 29, 1984.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Jimmy L. Bartley, was stopped at a police checkpoint roadblock. Officers at the checkpoint observed the defendant and arrested him for driving under the influence of intoxicating liquor (hereafter DUI). (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.) The trial court granted the defendant's motions to suppress his arrest and the related evidence. The State certified that the suppression order substantially impairs its ability to prosecute the defendant, and timely filed a notice of appeal.

Just prior to midnight on Saturday, December 18, 1982, officers from the McDonough County Sheriff's Department, Macomb City Police, Illinois State Police and Illinois Secretary of State Police set up a checkpoint on a five-lane street in Macomb. The checkpoint was located at a point between the city's only all-night restaurant and the central business district. The checkpoint operated for approximately two hours.

Following the hearing on the defendant's motion to suppress, the trial court found that the purpose for establishing the instant checkpoint was to apprehend DUI violators. The court concluded that the State's interest in apprehending DUI violators did not outweigh the intrusion caused by a checkpoint stop of citizens. The court held that the roadblock arrest violated the fourth amendment and therefore suppressed the evidence resulting from the defendant's arrest.

Based on the record, there can be little doubt that the roadblock was established for the purpose of apprehending drunk drivers.

Therefore, the sole question on appeal is whether such roadblocks are constitutionally permissible.

■ A checkpoint or roadblock stop constitutes a seizure within the meaning of the fourth amendment of the United States Constitution. In *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074, the Supreme Court declared that vehicle stops at a fixed checkpoint are consistent with the fourth amendment and do not require a warrant. The case involved a permanent checkpoint set up at the Mexican border to monitor the transport of illegal aliens. The court held that such stops did not need to be based on a reasonable suspicion of illegal activity as did border stops by roving patrols. *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574.

The court's reasoning was based on three considerations. First, a checkpoint stop involved minimal intrusion. The objective intrusion, which the court defined as the stop, questioning and visual inspection of the vehicles' occupants, was the same in checkpoint and roving patrol stops. However, subjective intrusion, defined as concern, surprise or alarm generated in the minds of lawful travelers, was much less in the case of checkpoint stops which were conducted at fixed locations with ample warning as to what a motorist was to expect. In contrast, stops by roving border patrols were usually conducted without warning on lonely roads at night, causing a great deal of concern and uneasiness on the part of a detainee. Also, checkpoint stops were considered less intrusive because officers had no discretion as to which cars would be inspected. The regularized manner in which the checkpoint operated was neither arbitrary, random nor capricious.

Second, the important government and public interest in stopping the flow of illegal immigrants far outweighed the minimal objective and subjective intrusion caused by the checkpoint stops.

Finally, the problem of illegal immigration could not be dealt with in a less intrusive manner. The only effective way of detecting whether persons are being smuggled across the border is to subject traffic to close inspection.

Based on the minimal intrusion involved, limited police discretion, the important government interest at stake and the unavailability of effective alternatives, the court approved warrantless checkpoint stops. Three years later in *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391, the court, in *dicta*, extended this holding to roadblock license checks in urban settings.

In *Prouse*, the court held that random stops by roving patrol cars for the purpose of conducting license and safety checks were unconsti-

tutional. Echoing the language of *Martinez*, the court held that the high degree of subjective intrusion caused by random stops outweighed the government interest in promoting highway safety and that random stops were an ineffective means of carrying out this interest. The court found that more effective and less intrusive means were available which minimized the field officers' discretion over whom to stop. One such means suggested by the court was to question all oncoming traffic at roadblock type stops. And so the roadblocks began.

■ The constitutionality of a roadblock designed to detain all traffic in order to screen out intoxicated drivers is an issue of first impression in Illinois. As with all warrantless searches and seizures, the constitutionality of DUI roadblocks is determined by balancing the legitimate governmental interest against the degree of intrusion on individuals' fourth amendment rights. *Delaware v. Prouse* (1979), 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396.

This balancing test involves three considerations: (1) the gravity of public concern served by the seizure; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty. *Brown v. Texas* (1979), 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2627.

Regarding the first factor, it is beyond dispute that drunk drivers are a grave menace to the public and that stronger measures are needed to cope with the problem. However, we must bear in mind that in cases where the Supreme Court has either expressly or impliedly sanctioned checkpoint stops, the criminal activity targeted was of such a nature that there was no other less intrusive but equally effective means of detecting violators. Transporters of illegal aliens and violators of license and safety equipment laws can rarely be detected by observing traffic.

■ In contrast, the foremost method of detecting drunk drivers has been by observing driving behavior. An intoxicated motorist can be easily discerned by a trained officer without having to stop all traffic at a roadblock. Another less intrusive means of deterring drunk drivers is through the enactment of stiffer penalties.

In applying the second factor to this case, we find that the State has failed to demonstrate the superiority of a roadblock over these less intrusive alternative means of deterrence. There is nothing in the record which shows that the only practical or effective means of catching drunk drivers is by arbitrarily subjecting all citizens to police scrutiny without suspicion of wrongdoing simply because they happen to be traveling on a particular road at a certain time.

As to the third factor, we cannot describe as minimal the degree of intrusion caused by DUI roadblocks. In theory, such stops are less intrusive than random stops by roving patrols. Supreme Court decisions which have so held were based on the permanence of a checkpoint, the lack of discretion left to the field officer and the advance warning to the public as to the reason for the stop. *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074.

In reality, DUI roadblocks are designed to be set up at night, without warning and at locations which are constantly changing. Motorists are often unaware of the reason for the stop prior to being asked to display their driver's license. Lights are shined into their eyes and officers peer into the passenger compartment of their automobile. Although field officers generally have no discretion over whom to stop, we are unaware of any criteria used by supervisory officers in determining the need, location, time and duration of a roadblock. (See *State v. Hilleshiem* (Iowa 1980), 291 N.W.2d 314.) DUI roadblocks involve a significant degree of intrusion. See *State ex rel. Ekstrom v. Justice Court* (1983), 136 Ariz. 1, 663 P.2d 992.

■ Based on the foregoing, we find that the government interest in detecting drunk drivers by employing roadblocks does not outweigh the resulting public inconvenience and interference with the individual's fourth amendment rights. DUI roadblocks involve a significant degree of intrusion and are of speculative deterrent value when compared to less intrusive means of enforcement. Therefore, we hold that roadblocks set up for the purpose of screening out drunk drivers violate article I, section 6, of the Illinois Constitution and the fourth and fourteenth amendments to the United States Constitution.

We express no opinion as to the constitutionality of license checkpoints since they are not at issue here. Nor does this opinion purport to limit the authority of law enforcement officials to apprehend on the basis of probable cause those motorists guilty of driving while under the influence.

The order of the circuit court of McDonough County granting the defendant's motion to suppress is affirmed.

Affirmed.

ALLOY, P.J., and SCOTT, J., concur.