**Lee Clark WEBB, III., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–01017–CR.**

Court of Appeals of Texas, Dallas.

June 26, 1985.

Rehearing Denied July 29, 1985.

John R. Leigh, Dallas, for appellant.

Deborah E. Farris, Asst. Dist. Atty., Dallas, for appellee.

Before STEPHENS, SPARLING and MCCLUNG, JJ.

STEPHENS, Justice.

On appeal from his conviction for driving while intoxicated, appellant presents three grounds of error, all of which are directed to the legality of his arrest. He contends that the roadblock at which he was stopped, and subsequently arrested, was not in fact a valid driver's license check authorized under TEX.REV.CIV.STAT. ANN. art. 6687b, § 13 (Vernon Supp.1985), and thus was unreasonable; that the roadblock was unlawful because although characterized as a driver's license check, such characterization was a subterfuge, and thus was in violation of both the United States and the Texas Constitution; and that for these reasons, the trial court erred in overruling his motion to suppress. We agree that the roadblock was unlawful and, accordingly, we reverse the judgment of the trial court and order that a judgment of acquittal be entered.

The record reveals that the Dallas Police Department was conducting what it characterized as a routine driver's license check on Greenville Avenue in Dallas, Texas on December 17, 1982, because of "its proximity to establishments that sell alcoholic beverages." While driving down Greenville Avenue, Webb was stopped by Officer Simpson, the State's only witness, and other unidentified officers. Although Officer Simpson testified on cross-examination that after Webb's automobile was stopped, Webb was asked to produce his driver's license and to get out of the car, he admitted on redirect examination that he did not hear anyone ask Webb to produce his driver's license. After being stopped for the purported "driver's license check," one of the officers detected the smell of alcohol on Webb's breath. Webb was immediately placed under arrest and walked to an adjacent parking lot where he was detained for an indeterminate period of time before he was transported to a police substation jail.

 Stopping an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments. *Delaware v. Prouse*, 440 U.S. 648, 655, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–558, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116; *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). Although it is settled law that peace officers have the unquestioned right to detain a person driving an automobile for the purpose of examining his or her driver's license, this detention is not lawful when the examination of the driver's license is a subterfuge, or an excuse for failure to procure a search warrant. *Razo v. State*, 577 S.W.2d 709, 711 (Tex.Crim.App.1979); *Fatemi v. State*, 558 S.W.2d 463, 465 (Tex. Crim.App.1977); *Faulkner v. State*, 549 S.W.2d 1, 2 (Tex.Crim.App.1976); TEX. REV.CIV.STAT.ANN. art. 6687b, § 13 (Vernon Supp.1985).

Since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct. *Terry,* 392 U.S. at 13, 88 S.Ct. at 1875; *see Weeks v. United States,* 232 U.S. 383, 391–393, 34 S.Ct. 341, 343–344, 58 L.Ed. 652 (1914). Thus, the major thrust of the rule is to deter improper conduct by police officers. *See Linkletter v. Walker,* 381 U.S. 618, 634, 635, 85 S.Ct. 1731, 1740, 14 L.Ed.2d 601 (1965). Experience has taught that this exclusionary rule is the only effective means to deter police misconduct in the criminal context; without it, the constitutional guarantee against unreasonable searches would be a mere "form of words." *Terry,* 392 U.S. at 13, 88 S.Ct. at 1875; *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

■ From the testimony, it is clear that Webb was not stopped for a routine driver's license check. The police stopped Webb to check for a violation of the law against driving while intoxicated. We quote the following from Officer Simpson of the Dallas Police Department:

Q. Was the roadblock not placed on Greenville because of its proximity to establishments that sell alcoholic beverages and also on Samuel Boulevard for the same purpose, and on Harry Hines for the same purpose?

A. That's correct.

Q. As opposed—you didn't just indiscriminately happen to pick a street? This was with a specific purpose in mind?

A. That's correct.

Q. And that purpose was not a driver's license check but it was, in fact, for a DWI check, is that correct?

A. That's correct.

Because the purpose of Webb's detention was not a routine driver's license check, the detention was not authorized under article 6687b, section 13. TEX.REV.CIV.STAT. ANN. art. 6687b, § 13 (Vernon Supp.1985). Consequently, any evidence arising from this detention was obtained unlawfully and should be suppressed. *United States v. Montgomery,* 561 F.2d 875, 878 (D.C.Cir.

1977); *United States v. Nicholas,* 448 F.2d 622, 623 (8th Cir.1971). Without objective evidentiary justification, which the Constitution requires, police conduct which invades personal security must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials. *Terry,* 392 U.S. at 13, 14, 88 S.Ct. at 1875, 1876.

As with all warrantless searches and seizures, the constitutionality of D.W.I. roadblocks is determined by balancing the legitimate governmental interest against the degree of intrusion on the individual's Fourth Amendment rights. *See Delaware v. Prouse,* 440 U.S. at 655, 99 S.Ct. at 1396; *Brignoni-Ponce,* 422 U.S. at 878, 95 S.Ct. at 2578; *United States v. Ortiz,* 422 U.S. 891, 895, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975). This balancing test involves three considerations: (1) The gravity of public concern served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. *Brown v. Texas,* 443 U.S. 47, 49, 99 S.Ct. 2637, 2639, 61 L.Ed.2d 357 (1979).

■ A central concern in balancing these considerations has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. *See Prouse,* 440 U.S. at 656, 99 S.Ct. at 1397; *Brignoni-Ponce,* 422 U.S. at 882, 95 S.Ct. at 2580; *Camara v. Municipal Court,* 387 U.S. 523, 532, 87 S.Ct. 1727, 1732, 18 L.Ed.2d 930 (1967). To this end, the Fourth Amendment requires that a seizure be based either on (1) specific evidence of an existing violation, (2) a showing that "reasonable legislative or administrative standards for conducting an inspection are satisfied, or (3) a showing that the search is carried out pursuant to a plan containing specific neutral criteria." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320–23, 98 S.Ct. 1816, 1824–1825, 56 L.Ed.2d 305 (1978); *see Martinez-Fuerte,* 428 U.S. at 558–562, 96 S.Ct. at 3083–3085; *Brown,* 443 U.S. at 50–51, 99 S.Ct. at 2640.

Although the United States Supreme Court has never ruled directly on the constitutionality of roadblock stops for the purpose of detecting drunk drivers, the Court has provided some guidance for the analysis of such seizures. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court held that a brief stopping for investigation of suspected criminal activity requires a lesser quantum of evidence than an arrest. A *"Terry"* stop allows a police officer, in an appropriate manner, to conduct brief, unplanned, individualized investigation under circumstances giving rise to a reasonable suspicion that criminal activity may be afoot. "And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State ex rel. Ekstrom v. Justice Court of the State of Arizona*, 136 Ariz. 1, 663 P.2d 992, 994 (1983) (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879).

In *Brignoni-Ponce*, 422 U.S. at 873, 95 S.Ct. at 2574, the Supreme Court addressed the legality of investigative stops of automobiles where the officer making the stop has neither probable cause nor reasonable suspicion to believe the car or its occupants are violating any applicable laws. *Brignoni-Ponce* involved the practice of using roving patrols to stop cars to search for illegal aliens. The Court determined that even though the public interest in monitoring the flow of illegal immigrants into the United States was substantial, the use of roving patrols violated the Fourth Amendment. *Brignoni-Ponce*, 422 U.S. at 873, 95 S.Ct. at 2574.

In *Martinez-Fuerte*, 428 U.S. at 543, 96 S.Ct. at 3074, the Supreme Court examined the constitutionality of the seizure of vehicles at *permanent* checkpoint stops operated by border patrol agents to monitor the transport of illegal aliens. *Martinez-Fuerte*, 428 U.S. at 543, 96 S.Ct. at 3074. Balancing the government's interest in the use of this practice against the intrusion on fourth amendment interests, the Court determined that vehicle stops at a fixed checkpoint are constitutional. The Court found that the three factors discussed in *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), were persuasive: (1) the reasonableness of the procedures followed at the checkpoints made the intrusion minimal; (2) the public interest in such checkpoints was found to be great; and (3) the need for the enforcement technique was demonstrated by the record. *Camara*, 387 U.S. at 535–537, 87 S.Ct. at 1734–1735. The crucial distinction between *Martinez-Fuerte* and *Brignoni-Ponce* is the lesser subjective intrusion ("the generating of concern or even fright on the part of lawful travelers") caused by a routine checkpoint stop rather than by roving patrols. *Martinez-Fuerte*, 428 U.S. at 558, 96 S.Ct. at 3083.

Three years later, in *Prouse*, 440 U.S. at 648, 99 S.Ct. at 1391, the Court, in dicta, extended the holding of *Martinez-Fuerte* to roadblock license checks in urban settings. In *Prouse*, the Court distinguished random stops of motor vehicles from roadblocks where the motorist is much less likely to be frightened or annoyed by the intrusion because the motorist can see visible signs of the officers' authority and can see that other vehicles are being stopped. *Prouse*, 440 U.S. at 657, 99 S.Ct. at 1398; *United States v. Ortiz*, 422 U.S. 891, 895, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975). *Prouse* concerned the random stopping of motor vehicles for the purpose of checking drivers' licenses and vehicle registrations. The Court determined that such stops were impermissible unless based on specific, articulable facts.

The Court, in *Prouse*, rejected the State's argument that the danger of abuse of discretion by police officers was diminished because the automobile is subject to considerable state regulation:

"Only last term we pointed out that 'if the government intrudes ... the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of

other statutory or other regulatory standards.' *Marshall v. Barlow's Inc.,* [(1978)] 436 U.S. [307] at 312–313, 98 S.Ct. [1816] at 1820 [56 L.Ed.2d 305]. There are certain 'relatively unique circumstances,' *id.,* at 313, 98 S.Ct., at 1820, in which consent to regulatory restrictions is presumptively concurrent with participation in the regulated enterprise. [Citations omitted.]. *Otherwise, regulatory inspections unaccompanied by any quantum of individualized, articulable suspicion must be undertaken pursuant to previously specified 'neutral criteria.'* *Marshall v. Barlow's, Inc., supra,* 436 U.S. at 323, 98 S.Ct. at 1826.

*Prouse,* 440 U.S. at 662, 99 S.Ct. at 1400 (emphasis added).

■ Despite its apparent disapproval of the practice of seizing motorists in the absence of some level of individualized suspicion, the dicta expressed in *Prouse* indicated that roadblocks, for the purpose of checking driver's licenses, properly conducted, would not violate an individual's Fourth Amendment rights: "This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401. The Fourth Amendment, thus, requires that a seizure be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Brown,* 443 U.S. at 50–51, 99 S.Ct. at 2640; *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401; *see Martinez-Fuerte,* 428 U.S. at 558–562, 96 S.Ct. at 3083–3085.

The constitutionality of a roadblock designed to detain all traffic in order to screen out intoxicated drivers is an issue of first impression in Texas. A survey of other state court cases, in which a Fourth Amendment challenge was made to the admissibility of evidence obtained at the police roadblock, established with the detection of drivers under the influence of alcohol as either its primary or secondary purpose, was made by the court in *State v. McLaughlin,* 471 N.E.2d 1125, 1134 (Ind. App.1984). It revealed a split in the decisions. Five decisions had upheld, as being non-violative of the Fourth Amendment, the conduct of the D.W.I. roadblock in question. *See State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983); *Kinslow v. Commonwealth,* 660 S.W.2d 677 (Ky.Ct.App. 1983); *State v. Coccomo,* 177 N.J.Super. 575, 427 A.2d 131 (1980); *People v. Scott,* 122 Misc.2d 731, 471 N.Y.S.2d 964 (1983); *People v. Peil,* 122 Misc.2d 617, 471 N.Y. S.2d 532 (1984). Five other decisions had found the conduct of the roadblock in question violative of the Fourth Amendment. *See State ex rel. Ekstrom,* 663 P.2d 992; *People v. Bartley,* 125 Ill.App.3d 575, 80 Ill.Dec. 894, 466 N.E.2d 346 (1984), *Commonwealth v. McGeoghegan,* 389 Mass. 137, 449 N.E.2d 349 (1983); *State v. Smith,* 674 P.2d 562 (Okla.Crim.App.1984); *State v. Olgaard,* 248 N.W.2d 392 (S.D.1976). The court held the roadblock in the *McLaughlin* case to be unlawful because the State failed to produce evidence showing that neutral criteria had been employed in the establishment of the roadblock and that the roadblock procedure advanced the public interest to a greater degree than would have been achieved by the traditional methods of drunk driving enforcement. *McLaughlin,* 471 N.E.2d at 1125.

Although the depth of analysis and decisive factors in these cases have varied greatly, one should note that out of the five cases upholding the constitutionality of D.W.I. roadblocks, only one relied solely on the dicta contained in *Prouse.* *See Kinslow,* 660 S.W.2d at 677. The other four cases based their decisions to uphold the roadblocks as constitutional on the basis that the police followed specific, defined standards in stopping motorists—their system was completely objective in its operation and the criteria used was purely neutral so that no discretion was involved.

*Coccomo,* 427 A.2d at 135; *Deskins,* 673 P.2d at 1184–1185; *Scott,* 471 N.Y.S.2d at 964; *Peil,* 471 N.Y.S.2d at 534.

One of the most thorough analyses of this issue was made by the Supreme Court of Kansas in *State v. Deskins,* where it was stated:

> Numerous conditions and factors must be considered in determining whether a D.U.I. roadblock meets the balancing test in favor of the state. Among the factors which should be considered are: (1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test.

*Deskins,* 673 P.2d at 1184–1185, cited with approval in *McLaughlin,* 471 N.E.2d at 1136; *see also State v. Hilleshiem,* 291 N.W.2d 314 (Iowa 1980). Not all of the factors need to be favorable to the state; though, all which are applicable to a given roadblock should be considered. *McLaughlin,* 471 N.E.2d at 1136; *Deskins,* 673 P.2d at 1185. Some factors, however, such as the unbridled discretion of an officer *in the field,* would run afoul of *Prouse* regardless of other favorable factors. *McLaughlin,* 471 N.E.2d at 1136; *Deskins,* 673 P.2d at 1185.

Using the principles of the cases and the above factors as a guide, our first step in determining whether the roadblock in question is constitutional is to examine the conduct of the roadblock in the present case in light of the balancing test enunciated in *Brown.* 443 U.S. at 47, 99 S.Ct. at 2637. The first step of the *Brown* balancing test is to determine whether the public interest in a D.W.I. roadblock of the type established in this case outweighs the individual's right to be free from intrusion on his or her privacy. At the outset, the most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire,* 403 U.S. 443, 444, 91 S.Ct. 2022, 2026, 29 L.Ed.2d 564 (1971) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Thus, the burden is on the State to show facts authorizing the warrantless seizure of the evidence which is challenged in the present case. *Koonce v. State,* 651 S.W.2d 46, 47 (Tex.App.—Dallas 1983, no writ); *Coolidge,* 403 U.S. at 445, 91 S.Ct. at 2027; *DeLao v. State,* 550 S.W.2d 289, 291 (Tex.Crim.App.1977). Although it is beyond dispute that drunk drivers pose a serious threat and are a grave menace to the public and that strong measures are needed to cope with the problem, the State failed to show facts authorizing the warrantless seizure challenged in the present case. The record discloses no statistics concerning the extent of the problem of drunk drivers on Greenville Avenue nor does it indicate whether the roadblock in question was more effective in dealing with the problem than the traditional roving patrols acting upon reasonable suspicion.[1]

---

1. The fact that a person is driving an automobile on a street proximately located to establishments that sell alcoholic beverages does not amount to probable cause that a crime has been committed. *See Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Daugherty v. United States,* 272 A.2d 675, 676 (1971).

Although the character of an area *in combination with other factors,* is relevant to a probable cause determination, the character of an area, standing alone, has never been sufficient to establish probable cause. *See United States v. White,* 655 F.2d 1302 (1981); *United States v. McCarthy,* 448 A.2d 267 (1982); *Scott v. State,*

*McLaughlin*, 471 N.E.2d at 1137; *State ex rel. Ekstrom*, 663 P.2d at 996.

In applying the second factor, the degree to which the seizure advances the public interest, the State failed in its burden of establishing the superiority of the Greenville Avenue roadblock in light of available less intrusive alternative means of deterrence. Nothing in the record indicates that the only practical or effective means of apprehending drunk drivers is by arbitrarily subjecting all citizens to police scrutiny without suspicion of wrongdoing simply because they happen to be traveling on a particular road at a certain time. *See Bartley*, 466 N.E.2d at 348.

We must bear in mind that in cases where the United States Supreme Court has either expressly or impliedly sanctioned checkpoint stops, the criminal activity targeted was of such a nature that there was no other less intrusive, but equally effective, means of detecting the violators. *Bartley*, 466 N.E.2d at 348. In this regard, we must recognize the fundamental distinction between the offenses of drunk driving, transporting illegal aliens, and failing to carry a valid driver's license when operating a motor vehicle. Violations of motor vehicle license laws and the transportation of illegal aliens can rarely be detected by observing traffic. The same is not true for D.W.I. violations. *Deskins*, 673 P.2d at 1187; *Bartley*, 466 N.E.2d at 348. Generally, drunk drivers can be readily discerned by law enforcement officers skilled in identifying the signals indicating that a person is driving under the influence of alcohol or drugs without having to stop all traffic at a roadblock. One alternative, less intrusive means of deterring drunk driving would be to increase the penalties for the violation. *Bartley*, 466 N.E.2d at 348.

Turning now to the third and final element of the *Brown* test, the relevant question is whether the valid public interest served is sufficient to justify the particular intrusion effected. *See Prouse*, 440 U.S. at

648, 99 S.Ct. at 1391. In applying the decisions of the United States Supreme Court to the present case, this court must question (1) the type of checkpoint involved, (2) the purpose of the checkpoint, and (3) the degree of intrusion and fright imposed upon the individuals passing through the roadblock. *State v. Smith*, 674 P.2d at 563.

First, the roadblock used would be classified as temporary. It was located at a fixed location for a set period of time and then moved. Additionally, the roadblock was not regularly established, *e.g.*, daily, weekly, monthly. It was a "one-night affair." This roadblock was not the type of permanent checkpoint approved for a limited purpose in *Martinez-Fuerte*, 428 U.S. at 543, 96 S.Ct. at 3074.

Second, the evidence regarding the purpose of the roadblock is conflicting. Although the record reflects that the Dallas Police Department was conducting what it characterized as a routine driver's license check, the State's only witness testified that the purpose of the roadblock was not a driver's license check, but was, in fact, a D.W.I. check.

Third, the court must consider the degree of intrusion and fear that an individual would be subjected to when passing through this roadblock. In the present case, the limited fright factor heavily relied upon by the Supreme Court in *Martinez-Fuerte* is much greater. In *Martinez-Fuerte*, the Court emphasized the necessity of the permanence of the checkpoint, the lack of discretion left to the officer in the field, and the advance warning to the public as to the reason for the stop. *Martinez-Fuerte*, 428 U.S. at 543, 96 S.Ct. at 3074.

The courts which have determined that D.W.I. roadblocks are constitutional have based their opinions on the finding that the roadblocks were "carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers to insure that the motorists were not subject

549 S.W.2d 170 (Tex.Crim.App.1976); *Peterkin v. United States*, 281 A.2d 567 (1971); *Daugher-*

*ty*, 272 A.2d at 675.

to the unbridled discretion of officers in the field." *Brown,* 443 U.S. at 51, 99 S.Ct. at 2640.

■ Examining the record before us, the only criteria supporting the constitutionality of the roadblock in question is that every car was stopped. There is no evidence that appellant, Webb, was asked to produce a driver's license. The only evidence of "an overall plan" is the testimony of the *field officer* that *he* didn't just indiscriminately happen to pick a street. The record contains no specific standards established by *superior officers* for setting up the roadblock or to structure the procedure to be followed by the officers present at the scene. The Fourth Amendment requires an actual showing that the proper procedures were followed at the time of the inspection. *United States v. New Orleans Public Service,* 723 F.2d 422, 428 (5th Cir. 1984). The State has made no such showing. Moreover, the State failed to establish the existence of advance notice to the public at large, advance warning to the individual approaching motorist, maintenance of safety conditions, the degree of fear or anxiety generated by the mode of operation, the average length of time each motorist was detained, the physical factors surrounding the location, the type and method of operation, or degree of effectiveness of the procedure.

It is apparent that the agents in this case acted with restraint. Yet the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer. A search has never been sustained by the United States Supreme Court upon the sole ground that the officers reasonably expected to find evidence of a particular crime and voluntarily confined their activities to the least intrusive means consistent with that end. *Katz,* 389 U.S. at 356–57, 88 S.Ct. at 514.

If roadblocks can be maintained to stop all persons, regardless of how innocent their conduct for the purpose of investigating or arresting drunk drivers, then presumably similar stops of all citizens could be undertaken for questioning and surveillance with regard to other crimes, such as possession of narcotics, possession of stolen property, or burglary. *State ex rel. Ekstrom,* 663 P.2d at 997. Such activities by law enforcement authorities, while commendable in their ultimate goal of removing D.W.I. offenders from the public roads, draw dangerously close to what may be referred to as a "police state." *Smith,* 674 P.2d at 564. Taking an "end justifies the means" approach, would lose sight of a basic tenet of American jurisprudence— that the government cannot assume criminal conduct in effectuating a stop such as the one in the instant case. *Smith,* 674 P.2d at 564.

Without evidence that an objective, non-discretionary procedure was being used, we hold that the initial stop of appellant's automobile violates the Fourth Amendment. Because the initial detention of Webb was unreasonable, all of the evidence seized as a result of that stop should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).

The judgment of the trial court is reversed and a judgment of acquittal is entered.

SPARLING, J., dissenting.

SPARLING, Justice, dissenting.

I dissent. I would hold that the act of stopping appellant's vehicle at a roadblock was not an unreasonable seizure and thus, not prohibited by U.S. CONST. amend. IV. Therefore, I would affirm.

In a motion to suppress hearing it was established that appellant was stopped in his vehicle at a police roadblock, found to be intoxicated, and arrested. The roadblock was located on Greenville Avenue in Dallas because of "its proximity to establishments that sell alcoholic beverages." On the day of the arrest the roadblock was operative between the hours of 7:00 p.m. and 10:00 P.M. Appellant was arrested at 9:20 P.M. All cars, without exception, traversing the location of the roadblock were stopped. Three times the arresting officer

testified that the roadblock was a "drivers license checkpoint." He later testified, however, that it was a "D.W.I. check." The issue of the purpose of the roadblock is further confused by the stipulation of the parties during the guilty plea that the officer "arrested the defendant while checking driver's license check [sic]." Thus, a preliminary issue is whether a checkpoint to detect intoxicated motorists should be governed by the same rules of law that govern a checkpoint to detect unlicensed drivers. I would hold that they should be treated identically, therefore, the inconsistent testimony is insignificant.[1]

When a peace officer detains a person it is a "seizure" within the meaning of the Fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is true even if there is no accompanying search. *United States v. Martinez-Fuerte*, 428 U.S. 543, 546, 96 S.Ct. 3074, 3077, 49 L.Ed.2d 1116 (1976) (slowing of an automobile is a "seizure"). If there is an unlawful seizure, then any probable cause to arrest emanating from that seizure will be likewise unlawful. Thus, if appellant was detained unlawfully, any subsequent probable cause to believe that he was intoxicated would be obtained unlawfully. There is no evidence of probable cause for the officers to believe that appellant was an unlicensed driver, and, prior to the seizure, there was no probable cause to believe that appellant was intoxicated. A seizure may be lawfully made, however, in the absence of probable cause providing the government's need to seize is balanced against the invasion which the seizure entails. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879. The government's need to seize may be determined by "its promotion of legit-

imate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

In *Prouse* the Supreme Court considered the constitutionality of a motorist's detention for the purpose of checking his drivers license under circumstances where there exists no probable cause and no reasonable suspicion that the motorist is unlicensed. *Prouse* held that such a seizure is unreasonable and thus violative of the Fourth Amendment. I would distinguish *Prouse*, however, as well as this court's similar holding in *Koonce v. State*, 651 S.W.2d 46 (Tex.App.—Dallas 1983, no pet.), in that the detention in *Prouse* was a "spot check" with no limit on the "unbridled discretion" of the officer to stop whomever he wished. In the present case the seizure resulted from a roadblock in which every motorist was stopped, thus every motorist was treated equally and the random aspect of a spot check was eliminated. This method is regarded favorably by the Supreme Court, which stated, "This holding does not preclude the State of Delaware or other States from developing methods of spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion.... *Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.*" *Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401 (emphasis added).[2]

I thus conclude that a balancing test consisting of the governmental need to check drivers licenses to prevent dangerous drivers, versus the degree of intrusion and the driver's anxiety created by the stop, favor the legality of the seizure: *provided*, the officer's "unbridled discretion" is deducted from the equation. The roadblock

---

**1.** The majority says "it is clear" that the stop was for a DWI check rather than a drivers license check. They may have guessed right, but because of the contradictory nature of the evidence I believe that we are powerless to decide this question of fact. Instead, it would be more appropriate to abate the appeal and remand to the trial court for a further factual determination. *See United States v. Pressley*, 602 F.2d 709, 710 (5th Cir.1979); *United States v. Alverez-Gonzales*, 542 F.2d 226, 227 (5th Cir.1976); *United States v. Greene*, 496 F.2d 1317, 1318 (5th Cir.

1974); *Garcia v. State*, 641 S.W.2d 246, 248 (Tex.Crim.App.1982); *Castleberry v. State*, 646 S.W.2d 599, 601 (Tex.App.—Houston [1st Dist.] 1983, pet. granted).

**2.** This suggestion is properly categorized as *obiter-dictum.* Yet, because this language was discussed—and criticized—by the concurring and dissenting opinions, I conclude that its continued presence in the opinion reflects the true sentiments of the majority of the Court.

method of stopping *every* driver achieves this condition.

Does it follow that the principles making a roadblock legal to detect unlicensed drivers apply to allow a roadblock to detect intoxicated drivers? By balancing the pertinent factors, I would hold that a roadblock may also be utilized to detect intoxicated drivers.

The laws prohibiting unlicensed drivers and intoxicated drivers are similar in that they are prophylactic in nature: the former seeks to prevent accidents by unqualified drivers, the latter by disabled drivers. "Intoxicated" and "unlicensed" are both states-of-being or conditions rather than discernable acts. An alternative to detecting unlicensed or intoxicated drivers at a roadblock is to investigate erratic and dangerous driving—or even an accident—conditions these laws are designed to prevent.[3] *See Prouse*, 440 U.S. at 660, 99 S.Ct. at 1399. Or, as Justice Rehnquist sarcastically suggested, the state could "check license and vehicle registrations as the wreckage is being towed away." *Prouse*, 440 U.S. at 666, 99 S.Ct. at 1402 (Rehnquist, J., dissenting).

I would hold that, if anything, there is a stronger government interest in detecting an intoxicated motorist than in detecting an unlicensed one because, in my judgment, the intoxicated driver is more dangerous. The Supreme Court in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), stated:

> The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy. *See Breithaupt v. Abram*, 352 U.S. 432, 439,

77 S.Ct. 408, 412, 1 L.Ed.2d 448 (1957) ("The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield"); *Tate v. Short*, 401 U.S. 395, 401, 91 S.Ct. 668, 672, 28 L.Ed.2d 130 (1971) (BLACKMUN, J., concurring) (deploring traffic irresponsibility and the frightful carnage it spews upon our highways:); *Perez v. Campbell*, 402 U.S. 637, 657 and 672, 91 S.Ct. 1704, 1715 and 1722; 29 L.Ed.2d 233 (1971) (BLACKMUN, J., concurring) ("The slaughter on the highways of this Nation exceeds the death toll of all our wars"); *Mackey v. Montrym*, 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–2621, 61 L.Ed.2d 321 (1979) (recognizing the "compelling interest in highway safety").

103 S.Ct. at 920.

On the other hand, the intrusion created in this case by the roadblock to detect intoxication was no greater than that for a license check. In neither instance is the automobile searched, and probable cause to believe that a driver is intoxicated may be determined at the time of the stop by observing the driver's general demeanor and odor. Once probable cause to believe a driver is intoxicated exists, the fact that the driver may be further detained and tested for intoxication is not germane to the degree of intrusion resulting from the initial seizure.

In the present case all persons stopped at the roadblock were asked for their driver's licenses, but there is no indication that they were systematically requested to step from their cars or otherwise detained. Appellant was requested to get out of his car, but the total evidence that probable cause to believe that appellant was intoxicated was formulated at or near the time appellant was initially stopped. Thus I would hold that the degree of intrusion caused by the roadblock was not unreasonable.

---

**3.** Our laws prohibiting unlicensed and intoxicated drivers directly relate to the safety of our public roads and highways—the site of the roadblock. Thus, these offenses by their nature are distinguishable from "possession of narcotics, possession of stolen property, or burglary" mentioned in the majority opinion as possible subject matter for future roadblocks leading to our becoming a "Police State."

The Supreme Court in *Prouse* discussed the anxiety suffered by the driver when spot checks are made, but conceded that stopping every vehicle creates substantially less psychological intrusion. *Prouse,* 440 U.S. at 657, 99 S.Ct. at 1398; *Martinez-Fuerte,* 428 U.S. at 558, 96 S.Ct. at 3083. Regardless, I would hold that the driver stopped at a DWI roadblock would suffer no greater anxiety than at any unlicensed driver roadblock.

Although stopping every motorist, without exception, at the roadblock resolves the issue of "unbridled discretion" as to the individual motorists, there remains the issue of whether the roadblock itself was the product of the officer's unbridled discretion. I would hold that it was not.

The evidence reveals that during evening hours the roadblock was placed on Greenville Avenue because of "its proximity to establishments that sell alcoholic beverages." The court asked the arresting officer: "[Y]ou didn't just indiscriminately happen to pick a street?" The officer answered: "That's correct." Further, the Greenville Avenue location was one of a series of roadblocks located near taverns. Three other Dallas areas were targeted—Samuel Boulevard, Harry Hines, and Industrial Avenue—thus demonstrating an overall plan or system of which the Greenville Avenue roadblock was only a part.

The roadblock remained in place for three hours. I find this length of time sufficient to dispel any speculation that the purpose of the roadblock was to surreptitiously catch just one motorist or a few specific motorists. Further indication that appellant was not "targeted" for an arrest is the fact that the roadblock was in operation for more than two hours before appellant was apprehended.

By authority of *Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, I would hold that the roadblock—whether to check for unlicensed motorists or drunk drivers—was not indiscriminately established or operated and that the seizure did not violate the Fourth Amendment. I would, accordingly, affirm.