**Matthew STARK, Plaintiff,**

v.

**Governor Rudy PERPICH; Paul J. Tschida, Commissioner of Public Safety and Brendan McDonald, President of St. Cloud State University, Defendants.**

No. CIVIL 4–84–656.

United States District Court,
D. Minnesota,
Fourth Division.

August 2, 1984.

Stephen Patrick Doyle, Doyle & Michales, and Linda Ojala, Minnesota Civil Liberties Union, Minneapolis, Minn., for plaintiff.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., Thomas L. Fabel, Deputy Atty. Gen., and Linda F. Close, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER INCORPORATING FINDINGS OF FACT AND CONCLUSIONS OF LAW

MacLAUGHLIN, District Judge.

This matter is before the Court on the plaintiff's motion for a preliminary injunction. The plaintiff seeks to have the defendants enjoined from conducting a roadside drunk driving survey of motorists that would involve stopping automobiles on public roads and administering blood alcohol content breath tests to consenting drivers.

### FACTS

The proposed survey, to be conducted by private researchers hired by the state and assisted by the State Highway Patrol, is designed to gather current data about the attitudes and behavior of individuals who drink and drive. By measuring the blood alcohol content of motorists who are stopped and asked to participate in the

survey, the researchers hope to discover, among other things, what impact Minnesota's new, tougher drunk driving laws have had on the incidence of drunk driving.

The researchers plan to establish 16 roadside test sites around the state, eight of which would be located in the Twin Cities metropolitan area. Vehicles would be stopped at each of the sites four nights a week for a period of four weeks. Approximately 1,000 drivers would be interviewed in all.

Vehicles would be stopped according to the following procedure. Large illuminated signs bearing the words "Traffic Survey Ahead" would be placed along the roadway at least one-tenth of a mile before each test site to notify drivers of the survey. Vehicles would be pulled off the road into the test site by State Highway Patrol officers using flashing red lights or other signalling devices. Vehicles would be selected on a random basis; once the lead researcher at a test site advises the police officers that a survey station is vacant and a new subject is needed, the officers are to direct the next approaching vehicle into the survey site. A driver's refusal to enter the survey site would not by itself make the driver subject to pursuit or arrest.

Once directed into the survey site, subjects would be informed of the purpose of the stop by the researchers. Drivers would be told that the survey is voluntary, that they are not under arrest, and that the information obtained from the survey will be kept confidential and cannot be used against them. Drivers who agree to participate in the survey would be asked to sign an informed consent form. They would then be given a blood alcohol content breath test and asked a series of questions by the researchers. The entire stop would last about 15 minutes. Drivers who decline to participate in the survey and who appear to be sober would be free to leave.

If a driver fails the breath test (blood alcohol content in excess of .10 percent), or if the researchers otherwise believe the driver to be drunk, the driver would not be allowed to resume driving but would instead be offered alternative transportation home within a reasonable distance, or free lodging in a nearby motel. Drivers who appear to be intoxicated would be encouraged to accept alternative transportation or lodging, but as a last resort, the police officers would be informed and the driver would be subject to arrest.

## DISCUSSION

The plaintiff contends the proposed survey procedures violate the fourth amendment's prohibition against unreasonable searches and seizures (made applicable to the states by the fourteenth amendment) by allowing police to stop motorists without a reasonable and articulable suspicion that a crime has been committed. The plaintiff further contends the state has demonstrated no state interest sufficient to justify this alleged intrusion on fourth amendment rights. Accordingly, the plaintiff asks the Court to enjoin the defendants from conducting the proposed survey.

### A. Legality of Police Stops of Vehicles

█ It is clear that a police stop of an automobile is a seizure that implicates the fourth amendment regardless of how brief the stop is, or how limited its purpose. *E.g., Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). It is also clear that, in the absence of a reasonable, articulable suspicion of unlawful conduct, law enforcement officials cannot use roving patrols to stop vehicles randomly at the discretion of the police. *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401; *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). The potential for abuse of the officers' discretion makes such random, discretionary stops unconstitutional.

█ On the other hand, the use of fixed checkpoints to stop all passing vehicles or to stop a portion of all vehicles on a systematic basis has been upheld. *United States v. Martinez-Fuerte,* 428 U.S. 543, 566–67, 96 S.Ct. 3074, 3086–87, 49 L.Ed.2d 1116 (1976); *Delaware v. Prouse,* 440 U.S.

at 663, 99 S.Ct. at 1401 (dictum). Such stops are permissible when used to further an important state interest because they minimize the exercise of official discretion and because they tend to frighten motorists less than roving patrol stops since drivers can see that all traffic is subject to being stopped. *Martinez-Fuerte*, 428 U.S. at 559, 96 S.Ct. at 3083.

 The legality of any plan for police stops of vehicles involves two considerations. First, does the plan incorporate safeguards to minimize the discretion of officers making the stops? Second, do the asserted state interests in making the stops justify the intrusion on motorists' fourth amendment rights? After careful consideration, the Court has determined the proposed survey is constitutional, provided the following additional safeguards are implemented.

### 1. Official discretion.

The proposed survey procedures contain several checks on the exercise of discretion by officers making the stops. First, the locations of the test sites are chosen by the researchers, not by law enforcement officers in the field. This factor satisfies the requirement that checkpoint sites be chosen by management personnel. *See United States v. Martinez-Fuerte*, 428 U.S. at 559, 96 S.Ct. at 3083; *State v. Olgaard*, 248 N.W.2d 392, 394–95 (S.D.1976). As a further check on official discretion, the Court hereby orders that the sites selected for the survey be chosen without regard to any racial, ethnic, or economic characteristics of the surrounding population or neighborhood, or of the population using the roadway.

The second check on official discretion is that the police officers stationed at the survey sites will have no discretion in selecting which vehicles are stopped. The researchers will indicate to the officers when another subject is needed and the officers will stop the next available vehicle. To insure neutral selection, the Court hereby orders that all police officers participating in the survey be instructed *in writing*

that they are to stop the next available vehicle that can be stopped with safety, without regard to the race, sex, age or any other characteristic of the driver or passengers, and without consideration of the age, make, or condition of the vehicle.

The final check on official discretion is that the police officers will have no contact with the occupants of the stopped vehicles other than to direct the drivers into the survey sites. Ordinarily, there will be no need for conversation between the drivers and the police officers. If a driver initiates conversation with a police officer prior to entering the survey site, the officer shall be instructed *in writing* to respond in the following manner:

> "This is a traffic survey. You are not required to take part. If you do not choose to take part, you may drive on."

With the additional restraints on official discretion outlined above, the Court is satisfied that the procedure for stopping vehicles is constitutional.

### 2. Balance of interests.

The remaining question is whether the state has advanced a sufficient state interest to justify the intrusion on motorists' fourth amendment rights. This issue involves a balancing of interests. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975).

The problem of drunk driving is unquestionably a legitimate and important concern of the state. According to congressional estimates, more than 25,000 deaths are caused by drunk drivers each year. H.R. Rep. No. 867, 97th Cong., 2d Sess 7, *reprinted in* 1982 U.S.Code Cong. & Ad. News 3367, 3367. In the face of this staggering death toll, states have enacted a variety of measures to combat drunk driving, *see, e.g.*, Note *Curbing the Drunk Driver under the Fourth Amendment: The Constitutionality of Roadblock Seizures*, 71 Geo.L.J. 1457, 1457 n. 2 (1983), and Minnesota has been at the forefront of these efforts.

The proposed survey is designed to measure the effectiveness of Minnesota's drunk driving laws in reducing the incidence of drunk driving. According to the unrebutted testimony of Charles F. Livingston, Executive Director of the National Committee Against Drunk Driving, a roadside survey is the only way to measure whether the percentage of drunk drivers on the road has fallen since 1976, the last time such a roadside survey was conducted anywhere in the country. Without this information, Livingston testified, policy-makers will be unable to determine whether Minnesota's drunk driving laws, which have been held up as a model for other states to follow, are an effective approach to combatting drunk driving. Thus, the proposed survey will have national significance.

On the other side of the scale, the interest of motorists in free and uninterrupted travel is substantial. *E.g., Carroll v. United States*, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Roadway stops are inconvenient, annoying, and even frightening to motorists. In this case, the duration of the stop and the nature of the information requested make the proposed survey particularly intrusive.

The proposed survey contains features designed to lessen these problems, however. Drivers would be warned in advance that they were approaching a traffic survey area, thereby reducing the fright associated with a sudden stop by a police officer. Contact between police and motorists would be kept to an absolute minimum. Traffic delays would be minimal since not all traffic would be stopped.

The most important feature, and the one that tips the balance in favor of allowing the proposed survey to proceed, is that participation is completely voluntary. Drivers who do not wish to participate may simply drive on. This voluntariness is meaningless, however, unless drivers know they have a right to refuse. A driver stopped by a uniformed police officer and requested to participate in the survey is placed in an inherently coercive situation. *Cf. Garrett v. Goodwin*, 569 F.Supp. 106,

120–21 (E.D.Ark.1982) (roadblock consent searches inherently coercive). To lessen this subjective coercion, and to insure that a driver's consent is truly a voluntary and informed consent, the Court orders that the researcher making the first contact with a survey subject read the driver the following statement:

"We are conducting a driver safety survey which deals with drinking and driving. Your vehicle was stopped completely by chance. You have not committed any traffic violation and you are completely free to leave at this time if you wish.

"If you choose to participate in the survey, which takes about 15 minutes, one of our researchers will ask you to take a breath test which measures the amount of alcohol in your blood stream. We will also ask you a series of questions from a questionnaire relating to drinking and driving.

"Neither the results of the breath test nor your answers to the questions will be used against you in any way. However, if the breath test shows you are legally drunk, you will not be allowed to resume driving but will instead be offered a free ride home or free lodging for the night in a motel. If you appear to be drunk and insist on continuing to drive, the police officers will be informed and you will then be subject to arrest.

"I want to repeat that the survey is completely voluntary and you are under no obligation whatsoever to participate. There is absolutely no penalty for refusing to participate. Further, if you do agree to participate and have a change of mind, you may withdraw from the survey at any time. Do you wish to participate in the survey?"

This statement will adequately inform drivers of their right not to participate and of the possible consequences of their participation.

With the above procedures to insure informed consent, *and particularly given the completely voluntary nature of the survey as outlined by the Court*, the

proposed survey is a constitutionally permissible means of furthering the state's important interest in combatting drunk driving. Consistent with the voluntary nature of the survey, the state concedes, and the Court so orders, that failure of a motorist to stop or to enter a survey site when directed to do so by a police officer shall not alone be grounds for arrest.[1]

Based on the foregoing, **IT IS ORDERED** that the plaintiff's motion for a preliminary injunction is denied and the defendants may proceed with the proposed survey. At the plaintiff's request, the Court's order will be stayed for ten days.

---

**1.** The plaintiff has objected to the researchers' plan to offer suspected drunk drivers the alternatives of a free ride home within a reasonable distance or free lodging in a motel, arguing that the term "reasonable distance" leaves the researchers too much discretion. The Court agrees and orders that the option of a free ride home be made available to any suspected drunk driver who lives within thirty miles of the survey site. Transportation should be provided by civilian survey personnel rather than police officers whenever possible. In addition, any costs incurred in storing or towing the vehicle of a person who cannot resume driving must be borne by the state.

The plaintiff also objects to the third paragraph in the defendants' proposed consent form, *see* exhibit H to Affidavit of John Palmer, July 12, 1984, arguing that the language is coercive. The paragraph in question is superfluous in light of the Court's requirement that drivers be read the statement set out above. It should therefore be redrafted or deleted.