**STATE of Indiana, Plaintiff-Appellant,**

v.

**Ray A. GARCIA, Defendant-Appellee.**

**No. 1–385 A 65.**

Court of Appeals of Indiana,
First District.

Aug. 1, 1985.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Ken A. Elmendorf, Elmendorf & Meyer, Brownsburg, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

The State of Indiana appeals the decision of the Hendricks Superior Court No. 2, granting defendant-appellee's motion to suppress evidence of driving while intoxicated obtained at a roadblock in Hendricks County. The sole issue is the constitutionality of the roadblock.

We reverse.

## STATEMENT OF THE FACTS

The Indiana State Police, pursuant to a state-wide program in cooperation with the Hendricks County Sheriff's Department, conducted a roadblock on U.S. 40, two and one-half miles east of Plainfield in Hendricks County. The purpose of the roadblock was to check for improperly licensed operators, improperly registered automobiles, under-age drinking, and persons driving while intoxicated. The State Police released prior publicity in various newspapers concerning the general plan to conduct roadblocks, but not of roadblocks in any specific location. The particular spot at issue was selected by Officer James B. Cramer, Supervisor of the Indiana State Police in Hendricks County, and Lt. Daniel Williams of the Hendricks County Sheriff's Department. Their decision was based upon information obtained from State Police records which reflected that this location in the road generated numerous fatal and nonfatal accidents involving alcohol, including an incident where a deputy sheriff was struck by a drunk driver while supervising a wreck. The roadblock was implemented in accordance with a pre-arranged plan generated by Marion County

and Morgan County, which was adopted by the Indiana State Police Department. The plan was developed in accordance with recent Supreme Court decisions.

Pursuant to the plan, the westbound traffic on U.S. 40 was stopped by approximately 11 uniformed officers who were visible on the highway. They blocked off the left westbound lane whereby all traffic was funneled into the right westbound lane, using flares and the lights from police cars to identify the roadblock. Non-selectively, cars were stopped in consecutive groups of five. Absent the detection of drinking or other violations, drivers were detained for no more than two or three minutes, during which time other traffic was permitted to pass. After a group of five was inspected and released, the next group of five cars traveling west was brought in, and the procedure was repeated. The drivers of the stopped cars were asked to produce operators licenses and registration certificates. If a violation was suspected, or alcohol consumption was detected, such operator was pulled over into a restaurant and motel parking lot. As relevant here, a driver suspected of alcohol consumption was given a field blood alcohol test. Any driver found to be over the presumptive limit of .10 blood alcohol content was then taken to the Hendricks County Jail where a breathalyzer test was administered. Upon failure of this second test, the operator was arrested. The berm near the roadblock was adequate for safety purposes, the area was lighted, and the roadblock was visible for a considerable distance. Additionally, the officers at the roadblock had absolutely no latitude or discretion to depart from the procedure set out in the plan. Numerous motorists, upon sighting the roadblock, turned their vehicles around and fled.

Garcia, who exhibited no erratic or suspicious driving, was in the first group of five cars stopped. He could produce no operator's license, whereupon an officer who was present recognized him and stated Garcia's operator's license had been suspended. After detecting alcohol on Garcia's breath, the officer read him an implied consent statement. Garcia agreed to take a field test, which he failed. Upon his subsequent failure of a breathalyzer test, Garcia was arrested. He was charged with his second offense of driving while intoxicated.

The roadblock was maintained for two hours. During this time, the officers stopped approximately 100 cars, issued 20 citations, and arrested seven persons for driving while intoxicated.

## DISCUSSION AND DECISION

In *Delaware v. Prouse*, (1979) 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660; *Brown v. Texas*, (1979) 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357; *United States v. Martinez-Fuerte*, (1976) 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116; and *United States v. Brignoni-Ponce*, (1975) 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, the Supreme Court of the United States has authorized, and specified parameters for, the right of police to maintain roadblocks under the Fourth Amendment. Essentially, the court has held that police officers in roving patrols are proscribed from stopping motorists. Exceptions include situations where there is at least an articulable and reasonable suspicion that the motorist was unlicensed, the automobile was unregistered, or that an occupant was subject to seizure for violation of a law. However, in *Prouse, supra,* the court said:

> "This holding does not preclude the ... States from developing methods for spot checks that involve less intrusion or that do not involve the *unconstrained* exercise of *discretion*. Questioning of all oncoming traffic *at roadblock-type stops* is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the *unbridled discretion* of police officers." (Our emphasis), (Footnotes omitted).

*Id.* 440 U.S. at 664, 99 S.Ct. at 1401.

In *Brown v. Texas, supra,* the court stated that the reasonableness of seizures, which are less intrusive than traditional

arrests, depends on a balance between the public interest and the individual's right to personal security from *arbitrary* interference by officers. The emphasis of these decisions is clearly a proscription against arbitrary invasions *solely* at the *unfettered* discretion of officers in the field. *Brown v. Texas, supra,* states:

"To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, *or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.*"

(Emphasis added).

*Id.* 443 U.S. at 52, 99 S.Ct. at 2641.

Subsequent to these Supreme Court decisions, the following cases have also expressed approval of roadblocks under *Prouse: United States v. Prichard,* (10th Cir.1981) 645 F.2d 854; *United States v. Miller,* (5th Cir.1979) 608 F.2d 1089; *State v. Goines,* (1984) 16 Ohio App.3d 168, 474 N.E.2d 1219; *People v. Peil,* (1984) 122 Misc.2d 617, 471 N.Y.S.2d 532; *People v. Scott,* (1984) 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1; *Little v. State,* (1984) 300 Md. 485, 479 A.2d 903; *Kinslow v. Commonwealth,* (1983) Ky.Ct.App., 660 S.W.2d 677; *State v. Deskins,* (1983) 234 Kan. 529, 673 P.2d 1174; *State v. Coccomo,* (1980) 177 N.J.Super. 575, 427 A.2d 131; *State v. Hilleshiem,* (1980) Iowa, 291 N.W.2d 314; *Miller v. State,* (1979) Miss., 373 So.2d 1004. Additional cases supporting roadblocks are catalogued in 37 A.L.R. 4th 10 (1984) including: *State v. Shankle,* (1982) 58 Or.App. 134, 647 P.2d 959; *State v. Frisby,* (1978) 161 W.Va. 734, 245 S.E.2d 622; *State v. Bloom,* (1977) 90 N.M. 192, 561 P.2d 465; *Brantley v. State,* (1976) Okla.Crim., 548 P.2d 675; *People v. Andrews,* (1971) 173 Colo. 510, 484 P.2d 1207; *People v. De La Torre,* (1967) 257 Cal. App.2d 162, 64 Cal.Rptr. 804; *State v. Smolen,* (1967) 4 Conn.Cir.Ct. 385, 232 A.2d 339; *Miami v. Aronovitz,* (1959) Fla., 114 So.2d 784. Our research indicates the above to be an overwhelming majority, though a minority position does exist. Moreover, a recent law review note, 17 *Ind.L.Rev.* 1065, discussed the controlling cases and concluded that pre-arranged roadblocks in Indiana are constitutional when no discretion of the field operator is allowed.

Prior to *Prouse,* our supreme court stated in *Williams v. State,* (1974) 261 Ind. 547, 307 N.E.2d 457:

"Social interest under the police powers should give law officers the right to stop users of the highways to check, for instance, their right to use the highway or to check the vehicles for safety standards.... Similarly, we have the search of passengers boarding airplanes."

*Id.* at 460.

In *Irwin v. State,* (1978) 178 Ind.App. 676, 383 N.E.2d 1086, a case turning on other matters, the court, citing *Williams, supra,* stated:

"Consequently, no one questions the right of law enforcement officers to establish a roadblock to conduct a routine traffic check of all vehicles and drivers passing through that point during a given period of time."

*Id.* at 1089.

In *Prichard, supra,* where a roadblock was set up to conduct a routine license and registration check, the field officers made arrests upon observing other offenses. That roadblock, which stopped all westbound traffic except trucks was conducted in a manner similar to the plan used here. When automobiles accumulated to an amount of ten, the officers waived all other drivers through in order to prevent the situation from becoming unduly hazardous. After the cars cleared, they commenced to stop cars again. The court said:

"In our view, the roadblock stop of the [defendant's car] does not run afoul of the rule of *Prouse.* While this may not have been a '100% roadblock' of the type referred to in *Prouse,* it is nonetheless a long way from the selective, single car stop denounced in *Prouse.* In the instant case, the New Mexico state police

were attempting to stop all westbound traffic on an interstate highway, insofar as was humanly possible. The decision not to stop trucks was reasonable under the circumstances, because, presumably, they had all been stopped at a port of entry. The purpose of the roadblock, *i.e.,* to check drivers' licenses and car registrations, was a legitimate one. If, in the process of so doing, the officers saw evidence of other crimes, they had the right to take reasonable investigative steps and were not required to close their eyes. *See United States v. Merryman,* 630 F.2d 780, 782–85 (10th Cir.1980). Furthermore, allowing all the stopped cars through when traffic became congested was also reasonable and, in our view, non-violative of the rule of *Prouse.* In sum, the roadblock stop of the [defendant's car] was, under the described circumstances, constitutional."

*Id.* at 856.

*See also: Stark v. Perpich,* 590 F.Supp. 1057 (less than all cars were stopped); *State v. Goines, supra,* (stopping less than all cars held valid); *State v. Coccomo, supra,* (Stopping every fifth car was held valid).

■ The central thread running through these cases is a proscription against the unbridled discretion and standardless conduct of an officer in the field, as with a roving patrol. The purpose of the Fourth Amendment is to establish a standard of reasonableness which requires articulable facts capable of measurement against an objective standard. Such a standard must insure that a motorist's reasonable expectation of privacy is not subject to the uncontrolling discretion of the officers in the field who are conducting the roadblock. *Prouse, supra; Scott, supra; Peil, supra.* The reasonableness of a roadblock, which is less intrusive than a traditional arrest, depends on a balance between the public interest in highway safety which includes ridding the roads of drunk drivers, and the individual's right to personal security from arbitrary interference by law officers. *Brown, supra.* Checking motorists

for intoxication is constitutionally permissible when carried out pursuant to a plan embodying explicit and neutral limitations on the conduct of individual officers in the field. *Brown, supra, Coccomo, supra.*

■ The state has a vital interest in promoting public safety by clearing the roads of drunk drivers, who are a threat to other motorists, pedestrians, and themselves. *Coccomo, supra.* The Supreme Court of the United States, as well as lower courts, has taken notice of the terrible carnage wreaked upon society by drunk drivers, wherein the slaughter exceeds that of all our wars. *South Dakota v. Neville,* (1983) 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748. The average number of deaths per year for the last 10 years which are attributable to drunk drivers is 25,000. We calculate the loss to be equivalent to two infantry divisions per year. *See: Ekstrom v. State,* (1983) 136 Ariz. 1, 663 P.2d 992, 996 (Feldman, J., concurring). Thus, the balance of the public interest in eradicating drunk driving tips heavily in favor of tolerating the slight intrusion and relatively minor inconvenience caused to a sober motorist who is stopped for two or three minutes for a non-arbitrary, uniform and systematic inspection, when such may serve to remove an intoxicated driver from the road. *Peil, supra.*

Some courts have devised specific standards for setting up roadblocks. For example in *Commonwealth v. McGeoghegan,* (1983) 389 Mass. 137, 449 N.E.2d 349, the Massachusetts Supreme Court set out the following criteria: (1) that the inconvenience to the motorist be minimized; (2) that the selection of the cars to be inspected be non-arbitrary; (3) that the safety of the motorists be assured; (4) that the roadblock be systematic in nature; and (5) that the roadblock be established pursuant to a pre-arranged plan of law enforcement established by supervisory personnel. Such guidelines are not essentially different from the more general criteria recited in *Brown v. Texas, supra,* and *People v. Bartley,* (1984) 125 Ill.App.3d 575, 80 Ill. Dec. 894, 466 N.E.2d 346. These courts

stated the balancing test involved: (1) the gravity of public concern served by the seizure; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty. Other cases have discussed similar standards. *See e.g.: Deskins, supra.*

Absent from our discussions until now is *State v. McLaughlin,* (1984) Ind.App., (4th Dist.) 471 N.E.2d 1125, (transfer denied May 3, 1985). Garcia relies almost totally upon this decision which held that a state police roadblock, not significantly different than the one at bar, violated the Fourth Amendment. In *McLaughlin,* the court discussed the authorities above and applied the balancing test set forth in *Brown, supra,* and *Bartley, supra.* Though *McLaughlin* acknowledged the presence of the *Brown,* criteria listed as (1) the gravity of the public concern served by the seizure; and (3) the low level of interference with individual liberty, the roadblock was declared in violation of the Fourth Amendment because of the alleged failure of *Brown's* second criterion. The *McLaughlin* court found:

> "[The] state presented no evidence that the roadblock procedure advanced this public interest to any degree greater than would have been accomplished by more traditional, less intrusive methods based on individualized suspicion."

*Id.* at 1138.

This position appears to have been gleaned from *Ekstrom, supra,* and *Bartley, supra,* as we find no such requirement or language in the other cases. *Ekstrom* and *Bartley* cite no real authority for such a position, but merely argue that patroling the roads and observing traffic is an equally efficient way to apprehend intoxicated drivers as stopping all motorists at roadblocks and examining them. The concurring opinion in *Ekstrom,* containing a detailed recital of the appalling accident statistics mentioned above, attacks this position by demonstrating the utter failure of the "traditional methods" of enforcing the drunk driving laws by roving patrols based upon individual suspicion. *Ekstrom* was

severely limited by a later Arizona case, *State v. Superior Ct. In & For Pima County,* (1984) 143 Ariz. 45, 691 P.2d 1073, which held a non-discretionary roadblock technique constitutionally permissible. Additionally, *Bartley* is suspect, for that same division of the Illinois Appellate Court held a roadblock constitutionally permissible on facts not materially different than those in *Bartley. People v. Long,* (1984) 124 Ill. App.3d 1030, 80 Ill.Dec. 332, 465 N.E.2d 123 (Decided June 14).

We are unable to agree with the Fourth District's holding in *McLaughlin.* The denial of the petition to transfer in *McLaughlin* has no legal effect other than to terminate the litigation between those parties in the supreme court. Ind.Rules of Procedure, Appellate Rule 11(B)(4). We are therefore not bound by controlling precedent in the denial of transfer. In view of the authorities cited above, omitted from *McLaughlin,* we are constrained to follow our own judgment until such time as our supreme court clarifies the issue.

 We perceive that it is the function of appellate review to determine the constitutionality of the acts of the officers, and not, from time to time or in the alternative, dictate techniques and methods to be utilized by police departments in the performance of their law enforcement duties. Starting with *Prouse,* followed by other federal cases and the vast majority of state court cases, roadblocks employed to apprehend and deter drunk drivers have been found constitutionally permissible under the Fourth Amendment. The unsupported contention in *McLaughlin, supra, Bartley, supra,* and *Ekstrom, supra;* that there was no showing made that those roadblocks were superior to traditional methods, went unmentioned in other cases on point, and is invalid. The obvious failure of the so-called traditional methods, evidenced by the appalling statistics of fatalities and injuries caused by drunk driving, indicates a need for a different approach to protecting the safety of our highways. Since our roadblock program is new, time must elapse to generate statistics upon which a

comparison can be made. Meanwhile, Indiana's structured plan conforms to the need for a different approach recognized and approved in *Prouse*, the supporting federal cases, and the host of state court decisions.

Additionally, the rather dramatic results obtained in two hours at this roadblock, 20 citations and 6 or 7 arrests for driving while intoxicated, can be put on the scale as was done in *Coccomo, supra*. There, the court said:

> "Numerous arrests for drunk driving have resulted since the program was instituted. This policy seems to be a productive mechanism for identifying unsafe drivers."

*Id.* 427 A.2d at 134.

In *McLaughlin*, three drunk drivers were arrested in an hour. Logic dictates that an extension of these apprehension figures to all roads throughout the state would give an indication of the enormity of the problem as well as the potential success of the program. The attainable deterent effect of roadblocks was shown in the present case when approaching motorists turned around to avoid the roadblock. A drunk driving enforcement program, prophylactic in purpose, which envisions apprehending violators before they kill innocent motorists is obviously superior to prosecuting the offender after the tragedy. Limiting and impractical rules engrafted on the officers' efforts and prosecution after the fact offer little comfort to the victims or their families.

■ Here, the roadblock was conducted according to a prearranged plan generated by supervisory personnel. These supervisors also specified explicit and neutral limitations on the conduct of the field officers, thereby permitting no impermissible discretion. The roadblock was advertised, well lighted, visible, and manned by uniformed officers. Furthermore, the inconvenience to the motorists being stopped for two or three minutes was minimal. All of the constitutional requirements mentioned in the determining cases, principally the limitation on the discretion of the officers in the field, were met.

For the above reasons, this cause is ordered reversed. The trial court is ordered to overrule Garcia's motion to quash.

Judgment reversed.

RATLIFF, P.J., concurs.

ROBERTSON, J., concurs in result.