On petition for review submitted February 15,* denied March 27, 1984

STATE OF OREGON,
*Respondent on Review,*

*v.*

RICHARD WILLIAM SCHROEDER,
*Petitioner on Review.*

(TC 82-21326-C; CA A28039; SC S30425)

678 P2d 1222

James E. Mountain, Jr., Solicitor General, Salem, submitted brief in the Court of Appeals for Respondent on Review. With him on the brief were Helen M. Rockett, Special Assistant Attorney General and Dave Frohnmayer, Attorney General, Salem.

William A. Mansfield, Medford, submitted petition for Petitioner on Review. With him on the briefs was Joel B. Reeder, P.C., Medford.

Linde, J., dissenting.

---

* On appeal from Jackson County District Court. Hon. Ross Davis, Judge and Hon. Ray White, Judge. 66 Or App 754, 675 P2d 1111 (1984).

**LINDE, J.,** dissenting.

In *State v. Tourtillot,* 289 Or 845, 618 P2d 423 (1980), this court affirmed a conviction of a traffic crime which was discovered when defendant's car was stopped by police at a "game checkpoint." The *Tourtillot* majority addressed defendant's constitutional objection to the checkpoint stop solely in terms drawn from the United States Supreme Court in unrelated types of checkpoint stops of vehicles, and it concluded that promotion of the government's interest in enforcing the game laws "on balance" justified the invasion of the driver's freedom represented by the checkpoint stop. Three members of the court dissented, objecting particularly that the majority's "balancing" stated only a conclusory formula without any substantive content. 289 Or at 879-882.

In the present case, petitioner appealed a conviction of driving under the influence of intoxicants, ORS 487.540. Evidence leading to this conviction was obtained by police officers who stopped vehicles at a stationary checkpoint for the purpose of checking vehicles and drivers for equipment, licenses, and possible intoxication. The opinion of the Court of Appeals affirming the conviction, 66 Or App 754, 675 P2d 1111 (1984), reads in its entirety:

> "In this case of driving under the influence of intoxicants, defendant appeals the trial court's denial of his motion to suppress evidence arising out of a traffic roadblock at which he was stopped and arrested. We cannot perceive a principled way in which this case may be distinguished from *State v. Tourtillot,* 289 Or 845, 618 P2d 423 (1980). It is therefore affirmed."

The court's statement that it "cannot perceive any principled way in which this case may be distinguished from *State v. Tourtillot*" demonstrates why the *Tourtillot* majority's formulation is inadequate and should be reexamined. Whatever may be the right outcome on the details of this case, a court should have no difficulty in recognizing a distinction between stopping vehicles to check for conditions of equipment, licenses, and drivers that the law requires for purposes of traffic safety and stopping vehicles to check whether their occupants perhaps may have committed some offense unrelated to the traffic laws.

The *Tourtillot* opinion itself purported to call for a case by case "balancing" of the importance of a governmental objective, the probable contribution of the checkpoint toward gaining that objective, and the intrusion on personal freedom and privacy in the time, place, and circumstances of each checkpoint. 289 Or at 858-859. That "balancing" approach was one of the chief criticisms made against it in the dissent. Law enforcement officials are entitled to clearer guidance. *State v. Tourtillot* did not even approve game checkpoints established in any manner at all times and all places. But counsel and courts cite opinions written on one state of facts as providing a general conclusion for all apparently similar cases, even when the rule stated in an opinion demands empirical case by case determinations. Obviously such supposedly empirical "balancing" tests, particularly as tests for constitutionality, do not well serve day to day administration of law by officials and trial courts.

In my view, now as in *Tourtillot,* the proper analysis is different. A properly authorized and systematically administered checkpoint stop to monitor compliance with traffic safety regulations of drivers and vehicles may well be constitutional when a check for other, unrelated crimes would not be, as far as warrantless search or seizure under Oregon Constitution, Article I, section 9 is concerned. The stop concerns the very activity that is the subject of administrative regulation, driving vehicles on the public roads, rather than investigation without reasonable suspicion of some unrelated crime to which driving a vehicle is only incidental. But, as *State v. Tourtillot* acknowledged, constitutional limits are the last step in the analysis, not the first.

A claim of official authority to interfere with people's freedom of movement and privacy by such means as a roadblock or obligatory checkpoint stop first needs a source for that authority in some law or policy enacted by a politically accountable lawmaker. Perhaps state and local lawmakers would choose to authorize roadblocks and checkpoint stops administered in prescribed ways, perhaps not. Second, the asserted authority must be administered within the authorization and not transgress some other law. Only then should constitutional limits become an issue.

Of course, the responsible lawmakers can delegate much detail to be provided by rules, which presumably are authorized only within constitutional limits. In *State v. Shankle,* 58 Or App 134, 647 P2d 959 (1982), which involved another license misdemeanor discovered at a traffic inspection checkpoint, the Court of Appeals noted that the inspection was conducted according to the Oregon State Police Policy Manual, although the court did not further discuss the source of the authorization. The present petitioner asserts that the record shows no comparable source of rules, regulations, or procedural guidelines. I have formed no view on the merits of either case.

I think it is time, however, to reexamine the premises expounded by the majority in *State v. Tourtillot, supra,* when the Court of Appeals perceives in those premises no principled way to distinguish that case from this one.