STATE of Indiana, Plaintiff-Appellant,

v.

Ray A. GARCIA, Defendant-Appellee.

No. 1–385 A 65.

Court of Appeals of Indiana,
First District.

Feb. 27, 1986.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for plaintiff-appellant.

Ken A. Elmendorf, Elmendorf & Meyer, Brownsburg, for defendant-appellee.

## OPINION ON REHEARING

NEAL, Judge.

Since the hand down of the opinion on July 24, 1985, 481 N.E.2d 148, a number of new cases have been brought to our attention which essentially affirm the constitutionality of a roadblock. *State v. Cloukey* (Me.1985), 486 A.2d 143; *State v. Kirk* (App.Div.1985), 202 N.J.Super. 28, 493 A.2d 1271; *State v. Tourtillott* (1980), 289 Or. 845, 618 P.2d 423, *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 352; *State v. Schroeder* (1983), 66 Or.App. 754, 675 P.2d 1111, *review denied,* 296 Or. 648, 678

P.2d 1227; *People v. Conway* (1985), 135 Ill.App.3d 887, 90 Ill.Dec. 618, 482 N.E.2d 437; and *People v. Bartley* (1985), 109 Ill.2d 273, 93 Ill.Dec. 347, 486 N.E.2d 880.

In *Bartley*, 93 Ill.Dec. 347, 486 N.E.2d 880, the Illinois Supreme Court reversed the Illinois Court of Appeals opinion cited in our original opinion as *People v. Bartley* (1984), 125 Ill.App.3d 575, 80 Ill.Dec. 894, 466 N.E.2d 346. Our Fourth District relied heavily upon that appellate opinion in *State v. McLaughlin* (1984), Ind.App., 471 N.E.2d 1125. In the reversal the Illinois Supreme Court stated:

"There is some authority for the proposition that highly visible patrols assigned to be on watch for erratic types of driving are a more effective means of apprehending drunken drivers than the means used here and therefore the subjective intrusion on individual rights outweighs the value of a roadblock. (*State v. Koppel* (N.H.1985), 499 A.2d 977.) The same point is emphasized in *State v. Marchand* (1985), 104 Wash.2d 434, 706 P.2d 225, and repeatedly in a recent law review article on the propriety of drunk-driving roadblocks (Jacobs & Strossen, *Mass Investigations Without Individualized Suspicion: A Constitutional and Policy Critique of Drunk Driving Roadblocks*, 18 *U.S.D.L.Rev.* 595 (1985)). We are not persuaded that roadblocks of the kind at issue here lose out in the balancing test for this reason. First, the erratic driver may cause injury to himself or others before he is observed by patrols. Second, the ability of a drunk driver to avoid erratic movements along a roadway does not mean he will be able to respond to an emergency where prompt reflexes may be of great importance. As the New York Court of Appeals said in *People v. Scott* (1984), 63 N.Y.2d 518, 528–29, 473 N.E.2d 1, 6, 483 N.Y.S.2d 649, 654: 'The State is entitled in the interest of public safety to bring all available resources to bear, without having to spell out the exact efficiency coefficient of each component and of the separate effects of any particular component.' Third, the carnage caused by

drinking and then driving is so serious it warrants resort to both types of apprehension—stopping automobiles which are being driven erratically and roadblocks to detect drunken drivers before they drive in an erratic manner.

The National Transportation Safety Board's Safety Study on deterrence of drunk driving recognizes the deterrent potential of drunk-driving roadblocks. The study points out that they preclude drunk drivers from assuming they will escape trouble simply by driving cautiously. In addition, the study points out that sobriety checkpoints are visible aspects that drunk driving is being combated and they afford police the opportunity to observe a larger number of motorists than would be possible during typical patrol procedures. Admittedly the possibility that a driver will face a roadblock on his way home will not discourage all drunk driving, but on the basis of common sense alone one must conclude that many persons aware of that prospect will have second thoughts about driving."

*Bartley*, 93 Ill.Dec. at 353, 486 N.E.2d at 886.

Though not directly on point here, our supreme court recently, in *Williams v. Crist* (1985), Ind., 484 N.E.2d 576, addressed another aspect of the drunk driving problem. It stated:

"As Judge Ratliff points out, the drunken driver is a major source of property damage and personal injury in the United States today. The drunken driver kills more citizens each year than any other group of criminals. As Judge Ratliff notes, in 1980, approximately 26,300 persons were killed in the United States by drunken drivers. *Roberts [v. Chaney* (1984), Ind.App., 465 N.E.2d 1154, 1161] (Ratliff, J., dissenting). We heartily agree with the statement made by Judge Ratliff in his dissent in *Roberts* that '[d]riving a motor vehicle while intoxicated thereby endangering one's guest rider is wanton and willful misconduct *per se* and it is high time we said so.' *Id.*

Probably because the consumption of alcoholic beverages is so widespread and generally accepted as a recreational pastime, legislators, juries and judges, both trial and appellate, have too often treated the problem in a cavalier manner. As Judge Ratliff says, it is high time we publicly state that the intoxicated driver is guilty of willful and wanton misconduct when he deliberately assumes control of an automobile and places it upon a public highway."

*Williams*, 484 N.E.2d at 578.

■ Garcia claims in his Petition for Rehearing that this court reweighed the evidence. The evidence summarized in the original opinion is the testimony of Officer Cramer, the only witness to give testimony concerning the roadblock. Officer Mimms, the only other witness in the hearing, confined his testimony to the breathalyzer test administered to Garcia. The trial court found that the facts concerning the roadblock were "virtually without controversy." The controversy was, and is, the court's conclusions reached from undisputed facts.

In its conclusions and order, the trial court, relying upon *Bartley*, 80 Ill.Dec. 894, 466 N.E.2d 346, (recently reversed by the Illinois Supreme Court, *Bartley*, 80 Ill.Dec. 894, 486 N.E.2d 880) stated as the crux of its decision that the usual method of enforcing drunk driving laws is intensified law enforcement and patrols. Such methods focus upon observation of the individual motorist whose intoxicated condition can be detected by a trained officer. The state had failed to show any evidence demonstrating the superiority of the roadblocks over the more conventional, less intrusive methods of detection. The record, it stated, is devoid of any evidence showing that the effectiveness and the productiveness of a roadblock outweighs the public's convenience and right of privacy. In conclusion, the trial court said: "[T]his Court is not pursuaded as to the necessity of the roadblock as an effective law enforcement tool. The roadblock represents a technique of speculative value which represents a significant and unwarranted intrusion of an individual's security and rights." Finally, the trial court concluded:

"Therefore, it is the opinion of this Court that not only this, but possibly all roadblock traffic checks established and operated for the purpose of detecting and apprehending an intoxicated driver are, *per se*, violative of Article I, Section 3 of the Indiana Constitution and the Fourth Amendment of the United States Constitution."

Additionally, in its conclusions and order, the trial court further found fault with the roadblock because the decision was made at the local level by supervisory personnel who participated in conducting the roadblock. It stated that the location of the roadblock represented a major and unreasonable intrusion upon the individual. The location of the roadblock, it continued, placed the officers and the unwary motorist at risk of serious injury and at least would generate surprise and anxiety to the individual.

■ We are of the opinion that in light of all of the authority on the subject, which almost unanimously supports the constitutionality of the roadblock on facts similar to those here, the trial court's conclusions are unwarranted. The trial court rejected any kind of a roadblock. Such is error. Even the proposition that the State must prove that roadblock techniques are superior to enforcement based upon individual suspicion has been rejected in the jurisdictions where it originated. The absence of county level supervisory personnel in the planning stages of a roadblock does not offend constitutionality. *Cloukey, supra.* The conclusion that the location was dangerous is unwarranted. No evidence of unreasonable danger was presented. The evidence was that approaching motorists would see the roadblock for .3 to .4 of a mile, and that the area was lighted by restaurant, motel and car lights, and had a six foot wide berm. Such a location existed in most of the cases cited above which approved roadblocks. Additionally, the cases have all held that the anxiety gener-

ated by such techniques is not unreasonable.

 Constitutionality of roadblocks does not hinge upon the level of supervision so long as roving patrols are not utilized. It does not hinge upon the place or time so long as reasonable safety is provided. These are administrative decisions to be made by officers in the field charged with the duty of law enforcement. It is the decision of supervisory personnel to utilize various methods of enforcement, and the fact that they utilize methods based upon individual suspicions or roadblocks or both, does not present a constitutional question.

For the above reasons, the Petition for Rehearing is denied.

ROBERTSON, P.J., and RATLIFF, J., concur.