Paul G. DAVIS, Appellant
(Defendant Below),

v.

Marvey J. SPONHAUER and Beverly Sponhauer, Appellees (Plaintiffs Below).

No. 43A03–9010–CV–441.

Court of Appeals of Indiana,
Third District.

June 24, 1991.

Michael J. Kramer, Heckner & Kirsch, Ligonier, Thomas L. Clem, Bagot Free & Shearer, Anderson, for appellant.

Richard K. Helm, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for appellees.

STATON, Judge.

Paul Davis appeals from an adverse judgment following a bench trial on Marvey and Beverly Sponhauer's complaint to quiet title to a disputed strip of land. Davis presents nineteen allegations of trial court error, which we consolidate and rephrase as:

I. Whether the trial court erred in concluding that the Sponhauers established title to the disputed tract by adverse possession.

II. Whether the trial court erred in concluding that the property line had been established by the agreement of the parties and their predecessors-in-interest.

III. Whether the trial court erred in concluding that Davis committed a slander of title against the Sponhauers.

IV. Whether the damages awarded to the Sponhauers were excessive.

V. Whether the trial court erred in awarding attorney fees to the Sponhauers.

VI. Whether the trial court erred in finding Davis in contempt for violating a preliminary injunction.

Affirmed in part, reversed in part.

This case concerns a boundary dispute over a strip of land located in the Cedar Point region of Lake Wawasee, Indiana. In 1973, the Sponhauers purchased two adjacent lots on which a cottage and boat house had been built. The Sponhauers' land is bordered on the south and east by lake channels. Davis' land borders the same southern lake channel, and is situated to the west of Mr. and Mrs. Sponhauer's lot.

In 1957, the parties' predecessors-in-interest vacated an unused roadway between their properties. This roadway makes up a

large portion of the disputed tract. From 1973 to 1977, the Sponhauers and the Vances (Davis' predecessor-in-interest) used the gravel lot in between the properties as a parking area for their vehicles. The Sponhauers would park their cars on the easternmost part of the lot, two abreast, while the Vances would park their vehicles on the western portion. In 1977, the Sponhauers and the Vances blacktopped the gravel area, each paying for half of the improvement, and continued the same parking routine. The parties also used this area for playing basketball and other activities. From that point on, the Sponhauers maintained the blacktop area, applying sealer as needed.

When the Vances acquired their property in 1973, the Claytons (Sponhauers' predecessors-in-interest) showed them the dividing line between the properties. The boundary was described as a line parallel to the Vances' boat house, running north from an angle in the seawall on the southern channel, through or near a point where an historical marker was located. In Mr. Vance's presence, Mr. Clayton pointed out the same line to the Sponhauers when they acquired their property later that year.

Davis acquired the property from Vance in 1986. A survey of the property required by Davis' lending institution revealed the platted boundary as a line on the eastern edge of the vacated road. Although Davis and the Sponhauers got along well initially, relations deteriorated in 1989 when Davis began requesting that the Sponhauers (and those who rented the cottage on occasion) remove their vehicles from the blacktopped area. After conducting another survey, Davis erected a fence six inches west of the platted boundary line. The fence was initially constructed in a manner that required the Sponhauers to trespass on their neighbor's property in order to get to their own land.

The Sponhauers filed suit to quiet title to the disputed property, alleging that they had acquired title by agreement, adverse possession, easement by prescription, and an easement of necessity. They also sued for slander of title, and sought preliminary and permanent injunctions, damages, and attorney fees. On October 19, 1989, the trial court entered a preliminary injunction, requiring Davis to leave removed that portion of his fence that had been taken down to allow the Sponhauers access to their property. The injunction also prohibited Davis from interfering with the Sponhauers' right to park their vehicles on the blacktopped area as they had done for the prior sixteen years.

On December 18, 1989, following a hearing on the Sponhauers' motion for contempt, the trial court found Davis in contempt for interfering with the Sponhauers' use of the blacktopped area. The court ordered Davis to comply with the injunction and pay the Sponhauers $400.00 in attorney fees. Following trial to the court, title to the disputed tract was quieted in the Sponhauers. The court established the property line as that agreed to by the parties' predecessors-in-interest, and ordered Davis to remove the fence. The court further ordered Davis to pay damages of $3,000.00 and attorney fees amounting to $8,071.00.

### Standard of Review

Because the trial court made specific findings of fact and conclusions of law, we are bound to review the same under the following standard: we first must determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *trans. denied.* The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *Brancheau v. Weddle* (1990), Ind.App., 555 N.E.2d 1315, 1317. Special findings are clearly erroneous if the record contains no facts or inferences supporting them. *Kaminszky, supra,* at 870. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made, such as where the evidence is without conflict and points unerringly to a different conclusion. *Indiana Dep't of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338, 1341, *trans. denied.*

## I.

### Adverse Possession

 Davis first argues that the Sponhauers failed to meet their burden of proving the elements necessary to prevail on their claim of adverse possession. Title to real estate may be defeated by adverse possession where the possession has been actual, visible, notorious, exclusive, under a claim of ownership, hostile to the true owner, and continuous for the statutory period. *Emberry Community Church v. Bloomington Dist. Missionary & Church Extension Society, Inc.* (1985), Ind.App., 482 N.E.2d 288, 294. The statutory period is ten years. IND.CODE 34-1-2-2(6) (1988); *Ford v. Eckert* (1980), Ind.App., 406 N.E.2d 1209.[1] However, record title is the highest evidence of ownership, and is not easily defeated. *McCarty v. Sheets* (1981), Ind., 423 N.E.2d 297. The facts relied upon as constituting adverse possession must be strictly proved by evidence that is clear, positive and unequivocal. *Piel v. DeWitt* (1976), 170 Ind.App. 63, 351 N.E.2d 48.

Davis contends that the Sponhauers' possession was not sufficiently open or notorious to sustain a finding of adverse possession. A notorious possession is one that is:

so conspicuous that it is generally known and talked of by the public—at least by the people in the vicinity of the premises. It must be manifest to the community.... It ought to be so well known and commonly understood that the people residing in the neighborhood could testify with substantial unanimity concerning its existence.... the possession must have been so notorious as to warrant the inference that the owner ought to have known that a stranger was asserting dominion over his land.

*McCarty, supra,* at 301 (quoting *Philbin v. Carr* (1920), 75 Ind.App. 560, 584–85, 129 N.E. 19, 27–28).

 A review of the record indicates the Sponhauers treated the disputed tract as their own property. They began parking their vehicles on the gravel lot from the very beginning of their residency at the lake. The evidence indicates that the lot was similarly used dating back to 1957. A few years after moving in, the Sponhauers and the Vances agreed to blacktop the parking area, splitting the cost. The Sponhauers continued to use the area to park their cars, and for other activities. Marvey Sponhauer maintained the blacktop area, applying sealant as needed. The Sponhauers placed a pier where the disputed tract borders the southern channel, and installed a birdhouse and some landscaping on that property. The Sponhauer children often played in the area in question. Neighbors were in agreement as to their understanding of the location of the property line, based on the Sponhauers' regular use of the property.

Contrary to Davis' assertions, these activities amount to more than just "casual

---

1. Davis makes the rather novel argument that the period within which to bring an action for recovery of the possession of real estate is actually twenty years instead of ten. He bases this argument on an interpretation of IC 32-1-20-1, which requires an adverse possessor to pay and discharge all taxes and special assessments falling due on the land, discussed *infra*. Pursuant to a 1982 amendment to IC 32-1-20-1, "nothing in this section shall relieve any adverse possessor or claimant from proving all the elements of title by adverse possession required by law *as of May 16, 1927.*" (Emphasis supplied). Davis correctly points out that the statutory period in effect as of May 16, 1927 was twenty years.

We cannot, however, reconcile this interpretation with the plain language of IC 34-1-2-2(6), establishing a ten year statute of limitations for the recovery of real estate. This statute of limitations runs against the titleholder; if the titleholder fails to oust the intruder within the ten year period, title to the property vests in the intruder, assuming all other elements of adverse possession are satisfied. *Kline v. Kramer* (1979), 179 Ind.App. 592, 596, 386 N.E.2d 982, 986–87.

Although Davis argues the language of IC 32-1-20-1 is couched in terms of greater specificity and, therefore, is the controlling of the two statutes, we need not resort to the wealth of prevailing case law that demonstrates the applicability of IC 34-1-2-2(6) to the claims of an adverse possessor. Moreover, in the adverse possession cases decided subsequent to the amendment to IC 32-1-20-1, no court has required an adverse claimant to establish the elements of possession for longer than the ten year period prescribed by IC 34-1-2-2(6). *See, e.g., Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778; *Greene v. Jones* (1986), Ind.App., 490 N.E.2d 776, *trans. denied.*

maintenance" of the sort generally found insufficient to support an adverse possession claim. *See, e.g., Beaver v. Vandall* (1989), Ind., 547 N.E.2d 802. The trial judge determined that the evidence supported the conclusion that the Sponhauers' use was notorious. We cannot say that the evidence is without conflict and supports a contrary conclusion.

■ Davis claims that the Sponhauers' possession was not exclusive. A possession is exclusive if it is of such a character that it operates as an ouster of the owner of legal title. *Philbin, supra*, 75 Ind.App. at 585, 129 N.E. at 28. There was ample testimony to establish that, from 1973 until 1986, the Sponhauers and the Vances recognized the existence of a property line running approximately through the middle of the blacktopped parking area. From 1973 until at least 1986 the Sponhauers (and those renting the cottage from them) used their portion of the lot for parking their vehicles. It is clear that the Sponhauers claimed a right to the land in question as evidenced by the parties' understanding of the location of the boundary, and by the Sponhauers' use of the property. The finding that the Sponhauers' possession was exclusive is not clearly erroneous.

■ An adverse claimant must also demonstrate that possession is adverse or "hostile" to the legal titleholder. *Emberry Community Church, supra*, at 294. In other words, the claim of ownership must be based on some ground justifying the adverse claimant's belief that he is the owner, and that claim must be communicated to the true owner. *Estate of Mark v. H.H. Smith Co.* (1989), Ind., 547 N.E.2d 796. Upon purchasing the property in 1973, Mr. Sponhauer was shown the now-disputed boundary line by Mr. Vance. Thus, the legal owner, Vance, who had purchased his property earlier in the year, was certainly aware of the existence and extent of the occupier's claim. The Sponhauers continued to use the property in a manner which clearly communicated the belief in their ownership of the property.

■ The hostility element may be defeated if the occupant disavows the right to possession of the property or acknowledges that the possession is subservient to the title held by the true owner. *Emberry Community Church, supra*, at 294. Even if we were to give credence to the claim that Mr. Sponhauer asked Davis' permission to use the property on a few occasions, such events occurred well after the ten-year statutory period had run, and are not relevant to a determination of title once vested in the adverse claimant. *Kline, supra*, 179 Ind.App. at 597, 386 N.E.2d at 987.

■ Arguing that the Vances gave Mr. and Mrs. Sponhauer permission to use the property during the statutory period, Davis claims that the possession could not have been hostile, citing *Lanham v. Marley* (1985), Ind.App., 475 N.E.2d 700. While the proposition that possession may not be hostile if it is undertaken with the knowledge, permission and consent of the titleholder is a correct statement of the law, it has no application in this case. Vance and his son testified that they believed the Sponhauers' use of the property was consistent with the boundary line as they believed it to be located. The Vances never knew they had the right to offer their permission or consent; therefore, they never gave it. The mere fact that the parties were mistaken as to the location of the property line did not make the Sponhauers' possession any less adverse. *Ford, supra*, at 1210. The conclusion that the Sponhauers satisfied the element of hostility is not clearly erroneous.

■ Davis also contends that the Sponhauers failed to pay property taxes on the disputed strip of land, as required by IC 32-1-20-1. However, Davis acknowledges that our courts have not applied this statute with exactitude, especially in cases concerning boundary disputes. *See, e.g., Ford, supra*, at 1211; *Kline, supra*, 179 Ind.App. at 600, 386 N.E.2d at 989. As this court stated in *Kline:* "The intent of the legislature and the purpose of the statute is to give the recorded titleholder notice that someone is claiming an interest ad-

verse to his." 179 Ind.App. at 600, 386 N.E.2d at 989. This notice may be in the form of a tax refund or a statement that the taxes have been paid. *Id.* In this case, tax statements did not serve notice of the adverse interest because the adjoining landowners continued to pay taxes on their adjoining land and the improvements thereon. The statute requiring the payment of taxes did not apply, and the trial court did not err in awarding the disputed property to the Sponhauers on their claim of adverse possession.

■■■ For his final argument with respect to adverse possession, Davis maintains that, assuming *arguendo* the Sponhauers established the elements of adverse possession for the statutory period, the trial court erroneously awarded an excessive amount of property. In adverse possession cases, the occupier's claim "must be limited to that portion over which he exercises palpable and continuing acts of ownership, as being the quantity which he claims as his own, there being no other evidence, in such case, to enable us to determine the quantity." *McCarty, supra,* at 300 (quoting *Bell v. Longworth* (1855), 6 Ind. 273, 277).

Without again reciting the evidence of the Sponhauers' acts of ownership, we note that there *is* other evidence to enable a trial court to determine the quantity of land involved. The trial court placed the property line where Vance (Davis' predecessor-in-interest) believed it to be located. Vance testified that Mr. Clayton, the Sponhauers' predecessor-in-interest, pointed out the boundary line while both Vance and the Sponhauers were present. The trial court's placement of the property line was not clearly erroneous.

## II.

### Property Line Agreement

The trial court concluded, that in addition to acquiring title to the disputed property by adverse possession, the Sponhauers gained possession of the property through an agreement with Vance, Davis' predecessor-in-interest. Davis contends this conclusion is in error, arguing that there was no evidence of such an agreement.

Davis relies primarily on *Freiburger v. Fry* (1982), Ind.App., 439 N.E.2d 169. In *Freiburger,* adjoining landowners agreed to erect a partition fence along their common property line. One party, Fry, mistakenly built the northern portion of the fence well within the property of his neighbor, Mr. Beers. More than twenty years later, when the Freiburgers purchased Beers' property, they demanded that the fence be removed in order to gain access to a private lake that extended onto their property. This court held that the Frys and the Freiburgers' predecessor-in-interest agreed to erect a partition fence and subsequently treated that fence as a legal boundary line. *Id.* at 172. The court stated:

> When adjoining landowners agree to erect a fence and treat that as a legal boundary, they are estopped from denying that this is the legal boundary line.
>
> ... The line agreement need not be express and may be inferred from the parties' actions, but there must be evidence of some agreement as to the boundary line. Use and improvement of the land up to the alleged boundary line may be sufficient to satisfy the requirement of an agreement if the adjoining landowner acquiesces.

*Id.* (citations omitted).

■■■ Vance testified that he had an "understanding" with the Sponhauers as to the location of the property line. Vance concurred when Clayton pointed out the boundary line to the Sponhauers. Davis himself appears to acknowledge the existence of an express agreement when he states "there was no evidence of any agreement beyond the testimony of Marvey Sponhauer and Leon Vance." Appellant's Brief, p. 45. The accordant testimony of two adjoining landowners is sufficient to establish a property line by agreement. Moreover, the use and improvement of the land, in that Vance and the Sponhauers split the cost of installing the blacktopped area, further supports the existence of an agreement. Although the conclusion that there was an agreed property line may be

nothing more than surplusage, in light of our affirmance on the adverse possession issue, *supra*, it is supported by evidence in the record.

## III.

### *Slander of Title*

■ Davis contends the trial court erred in concluding that he committed a slander of title against the Sponhauers. To prevail on a claim of slander of title "the plaintiff has the burden of proving that the defendant made certain statements regarding the plaintiff's ownership of the land in question, that the statements were untrue, uttered with malice, and caused the plaintiff pecuniary loss." *Freiburger, supra*, at 173. Malicious statements are those made knowingly or with reckless disregard for their falsity. *Id.* at 174. In that case, the Freiburgers asked the Frys to remove the fence dividing their respective properties. This court found that, upon the Frys' denial of this request, the Freiburgers were on notice to discover the true ownership of the disputed area. Without discovering the true owner, the Freiburgers' claims of ownership were made in reckless disregard of their truth.

■ In the present case, however, Davis claims there was no evidence that he made any oral statement disparaging the Sponhauers' ownership of the land. However, Davis acknowledges that he has told the Sponhauers to move their vehicles off of the blacktopped area entirely. At one point, Davis dumped a large pile of landscaping rock on the blacktopped area, making any parking by the Sponhauers impossible. In 1989, Davis erected a fence six inches west of his surveyed property line, completely cutting off the Sponhauer property from access to the blacktopped area and road. We agree with the Sponhauers that this conduct can and did amount to a statement of ownership of the property.

Davis posits that, until the trial court entered the order conclusively establishing the property line, his statements to the effect that the disputed property did not belong to the Sponhauers could not have been false. This argument is without merit. Once an occupier possesses property for ten years in a continuous, adverse, notorious and exclusive manner, title vests in that person by operation of law. *Kline, supra*, 386 N.E.2d at 987. Therefore, Davis' statements disparaging the Sponhauers' ownership interest in the property were false.

■ There remains, however, the question of whether Davis knew his statements were false or acted in reckless disregard of their falsity, *i.e.*, the element of malice. The Sponhauers contend that they informed Davis of their interest in the disputed tract, and that Vance had even suggested to Davis that he quitclaim the property to the Sponhauers. On the other hand, Davis had two surveys conducted of his property; one when he purchased the property and another prior to installing his fence. Neither survey revealed the location of the agreed-upon boundary line. Unlike the situation in *Freiburger, supra*, there was no fence, hedgerow, or monument which would clearly indicate the existence of a property line. Furthermore, the titleholder in *Freiburger* did not base his assertion of property rights on a valid land survey; rather, the titleholder wanted a partition fence removed in order to gain access to a private lake. 439 N.E.2d at 172.

Faced with the choice of believing the unsworn statements of Vance and the Sponhauers or the property line description from two land surveys, it was not unreasonable for Davis to place his faith in the latter. The evidence does not support the finding that Davis made statements concerning ownership of the property with the knowledge or in reckless disregard of their falsity. Therefore, the conclusion that Davis acted with malice in making such statements is clearly erroneous. Davis did not commit a slander of title against the Sponhauers.

## IV.

### *Damages*

■ The trial court awarded $3,000.00 to the Sponhauers for general

damages. Davis argues that this award is excessive. On appeal, a damage award will not be reversed if it is within the scope of the evidence. When reviewing the evidence, we may not reweigh the evidence or judge the credibility of the witnesses. *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, *reh. denied.*

■ A tenant of the Sponhauers testified that he abandoned the rental property shortly after Davis asserted his ownership of the tract. Mr. Sponhauer stated that he lost rental income in the amount of $1,625.00. Sponhauer further estimated a replacement cost of $375.00 for a tree, a birdhouse, and docking area that had been removed from the disputed tract in the course of Davis' boat house construction. The trial court found that the Sponhauers had suffered damage by reason of loss of rental income, the removal of the aforementioned items, and by reason of Davis' trespass on the land. The award of $3,000.00 is within the scope of the evidence.

## V.

### Attorney Fees

The trial court also awarded the Sponhauers $8,071 for attorney fees, finding that Davis had interposed an unreasonable and frivolous defense. *See* IC 34–1–32–1. Davis claims that this finding was in error. The propriety of an award of attorney fees is reviewed under the following standards:

Initially, we review the trial court's findings of fact under the clearly erroneous standard. We then review *de novo* the trial court's legal conclusion that a party either (1) brought an action or defense on a claim or defense that is frivolous, unreasonable or groundless, or (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable or groundless, or (3) litigated in bad faith.

*Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164, 167, *aff'd*, Ind., 543 N.E.2d 627.

In the present case, the trial court issued the following finding:

37. That the [Sponhauers] made a strong prima facie case of adverse possession at the October 19, 1989 trial of the preliminary injunction herein and that [Davis] has not presented any significant facts or evidence to contradict the case already presented in October, 1989; in particular the testimony of Leon Vance was in more detail but not significantly different in the trial of this case as it was in October 19, 1989 and that his testimony was and is substantially dispositive of the case. The Court finds and determines under the circumstances that the defense of the case subsequent to October 19, 1989 has been unreasonable and frivolous and that under the circumstances the [Sponhauers] are entitled to recover their attorneys fees incurred in the defense thereof, which the Court finds to be in the reasonable sum of $8,071.00.

Record, pp. 101–02.

Under the clearly erroneous standard, this factual finding must be upheld. Davis makes no assertion that the evidence on this point is incontrovertible and leads to a contrary result. In fact, the record supports the finding that Davis failed to present the court with any significant facts that would operate to reverse the court's determination in the preliminary injunction phase of the proceedings. At this point, we are not left with the definite and firm conviction that a mistake has been made by the trial court.

■ Under the second step of our review we must determine under the *de novo* standard whether Davis raised the type of defense that would entitle the Sponhauers to attorney fees. As stated above, the Sponhauers would be entitled to attorney fees if Davis' defense was "frivolous, unreasonable or groundless." *Kahn*, 533 N.E.2d at 167. As Chief Judge Ratliff wrote in *Kahn:*

[A] claim or defense is "frivolous" (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the

lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.

... [A] claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified.

... [A] claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party.

533 N.E.2d at 170–71 (citations omitted). An action is neither groundless nor frivolous merely because a party loses on the merits. *Id.* at 171.

■■■■■ Although we concur with the trial court finding that Davis did not supply any significant facts at trial that were not before the court in the preliminary injunction stage, we cannot agree that his defense was frivolous, unreasonable or groundless. We note that a preliminary injunction is a provisional remedy, in that it is an order sought to preserve the status quo pending a final determination of the case on the merits. *City of Fort Wayne v. State ex rel. Hoagland* (1976), 168 Ind.App. 262, 342 N.E.2d 865. A party seeking a preliminary injunction must demonstrate, *inter alia,* that there is a reasonable likelihood of success at trial by establishing a prima facie case. *Steenhoven v. College Life Ins. Co. of America* (1984), Ind.App., 458 N.E.2d 661, *reh. denied,* 460 N.E.2d 973. Such a showing, however, does not foreclose a trial on the merits. The fact that a defendant asserts the same defense at trial as he did at the preliminary injunction hearing does not compel the conclusion that the defense was frivolous, unless the same was true from the commencement of the proceedings. It is to this question that we now turn.

Despite some evidence of what may be considered harassing or malicious acts on the part of Davis, it does not appear that this suit was defended on that basis. As Davis points out, he conducted two surveys of his property, each indicating, along with his deed, that he was the titleholder of record to the disputed tract. It is clear that Davis defended the suit in order to establish ownership over the property. It is equally clear that an attorney for a record titleholder could make a good faith and rational argument in defense of this claim. Davis' defense of the Sponhauer lawsuit was not undertaken frivolously.

Davis did not act unreasonably in his defense. Considering the totality of the circumstances, including the law and facts known at the time of the filing of this action, a reasonable attorney could well find Davis' claim as record titleholder worthy of defending.

Finally, we examine whether Davis' defense was groundless, *i.e.,* without any factual support. As noted previously, two surveys and a deed supported Davis' claim that he was the true owner of the disputed property. Because there are facts to support his position, Davis' defense was not groundless.

Although Davis may not have acted amiably in his attempts to regain control over the disputed property, we are hesitant to penalize a titleholder for defending a claim to land described as his in a deed and two land surveys. Under our powers of *de novo* review, we conclude that Davis did not interpose a frivolous, unreasonable or groundless defense. Accordingly, the award of attorney fees must be reversed.

## VI.

### *Contempt Order*

■■■■■ For his final allegation of error, Davis contends that the trial court erroneously found him in contempt for violating the terms of the preliminary injunction. Punishment for contempt is generally a matter left to the sound discretion of the trial court; where the trial court's action is clearly against the logic and effect of the circumstances, an abuse of discretion will be found on appeal. *Indiana Stream Pollution Control Bd. v. Tippecanoe Sanitary Landfill, Inc.* (1987), Ind.App., 511 N.E.2d 473, 475, *trans. denied.*

The terms of the injunction obliged Davis to leave the blacktopped area east of the historical marker free for the Sponhauers' use and to not interfere with such use. Davis was present when the trial court issued its order. Evidence adduced at the hearing on contempt indicated that Davis or his agents remodeling his boat house interfered with the Sponhauers' use of the property. Evidence also indicated that Davis or his agents moved the historical marker closer to the Sponhauers' cottage. The trial court's action is not against the logic and effect of the circumstances; therefore, the contempt order does not amount to an abuse of discretion.

The judgment quieting title in the Sponhauers based on adverse possession and, alternatively, on an agreed boundary line is affirmed. The finding of contempt and award of general damages are likewise affirmed. The finding of slander of title and the award of attorney fees for conducting a frivolous defense are reversed.

SHARPNACK, J., concurs.

GARRARD, J., dissents and files separate opinion.

GARRARD, Judge, dissenting.

I concur with parts I, II, IV and VI.

I also concur with part III except for the majority's determination that the element of malice was not established.

Our decisions have adopted a standard of actual malice in slander of title claims. *Freiburger v. Fry* (1982), Ind.App., 439 N.E.2d 169; *Display Fixtures, Inc. v. R.L. Hatcher, Inc.* (1982) Ind.App., 438 N.E.2d 26; *Harper v. Goodin* (1980) Ind.App., 409 N.E.2d 1129. Thus, the claimant must establish that the defendant uttered the statement with knowledge of its falsity or with reckless disregard for whether or not it was false.

The majority asserts that this standard was not met because "it was not unreasonable for Davis to place his faith in [the two land surveys]". It appears to me that this confuses the issue and involves this court in reweighing the evidence, a task we eschew.

The issue is not whether there was evidence which might be credited in order to reverse the trial court but whether there was evidence and reasonable inference which might sustain it. Translated, that means was there evidence sufficient to support the determination that Davis' actions were taken with reckless disregard for whether or not his claim was false. Mere negligence was not sufficient, but the evidence would be sufficient if the evidence supported the reasonable inference that Davis entertained serious doubts about the validity of his claim when he acted.

In *Freiburger* we held the evidence sufficient to sustain the inference of actual malice where, despite the description in his deed, the defendant had actual knowledge of an existing fence separating the property and that the owner on the other side refused to remove it.

In the present case, despite what appeared on the surveys, Davis had actual knowledge from both his own predecessor in title and the Sponhauers that they were the owners of the disputed area. Furthermore, regardless of the surveys, Davis could not shut his eyes to what he saw concerning the use and maintenance of the disputed area. From the evidence favorable to the judgment the trial court could have reasonably inferred that Davis made his claims by word and deed at a time when he entertained serious doubts as to their validity. For that reason the finding of slander of title should be affirmed.

I also dissent to the majority's analysis and disposition of issue V, concerning attorney fees. The majority states that the fact a defendant asserts the same defense at trial that he did at a preliminary injunction hearing does not compel the conclusion that the defense was frivolous, unless the same was true from the commencement of the proceedings. It then focuses its attention exclusively on Davis' initial assertion of his position. In so doing, the majority ignores I.C. 34–1–32–1(b)(2), which permits the court to award attorney fees if it finds a party "*continued* to litigate the action or defense after the party's claim or defense

clearly became frivolous, unreasonable or groundless." In this case the court did not determine that the defense, itself, was frivolous or unreasonable. It did determine that Davis' continued assertion of the defense, after the full evidentiary hearing on the preliminary injunction and despite Davis' failure "to present any significant facts or evidence to contradict the case already presented," constituted an unreasonable or frivolous (*i.e.*, harassing) continuation of the litigation. In accord with the definitions adopted in *Kahn v. Cundiff* (1989) Ind.App., 533 N.E.2d 164, *aff'd* Ind., 543 N.E.2d 627. the court could have properly so found. The award should be affirmed.

I would affirm the judgment in its entirety.