OPINION
In this accelerated calendar case, appellant, Joshua M. Plough ("Plough"), appeals from the judgment and sentencing of the Portage County Court of Common Pleas entered on February 25, 1999, and May 5, 1999, respectively. The following are the facts relevant to a determination of this appeal.
After a jury trial, Plough was convicted of three counts of trafficking in marijuana and two counts of trafficking in LSD. The marijuana offenses were fifth degree felonies. The sales of marijuana occurred on December 12, 1997, on January 14, 1998, and on July 23, 1998. The LSD sales occurred on July 30, 1998 and September 4, 1998. The LSD convictions were for bulk amounts of more than ten but less than fifty unit doses, constituting fourth degree felonies. Plough got the minimum sentence of six months incarceration on each of the marijuana convictions. The minimum possible sentence on each LSD conviction was six months. He was sentenced to nine months for each of the LSD convictions. All sentences were set to run concurrently. Plough has completed his sentences and has been released from prison.
The investigation of Plough was directed by an undercover police officer, David Blough ("Officer Blough"), who is assigned to the Western Portage County Drug Task Force. Officer Blough enlisted the help of a confidential informant, Frank Bilby ("Bilby"), to make the drug purchases. Bilby had been arrested for theft by the Brimfield Police Department at the time Officer Blough approached him. At the time of this arrest, Bilby was undergoing a presentence investigation for his plea to a breaking and entering charge, a fifth degree felony. In exchange for his cooperation with the task force, Bilby was never charged with the theft offense. Also, Bilby's plea to the breaking and entering charge was vacated prior to sentencing and the case dismissed. At trial, both Officer Blough and Bilby were extensively cross-examined on the nature of Bilby's agreement to cooperate with the task force, the terms of Bilby's deal, and his criminal record. Bilby testified that, when he agreed to cooperate with Officer Blough, he provided the officer with the names of five or six people from whom he thought he could buy drugs. Plough was one of them.
At trial, Plough attempted to raise the defense of "outrageous governmental conduct." The theory of this defense is that if the conduct of law enforcement officers, in building a case, is too outrageous, due process principles would bar a conviction. The defense wished to demonstrate that the police and prosecutor went to "outrageous" lengths to prosecute Plough. In support of this theory, outside the presence of the jury, the defense proffered the testimony of three witnesses: Bridgette Jordan, the victim of Bilby's breaking and entering offense, Wendy Johnson, Ms. Jordan's victim advocate, and Officer Troy Beaver, who arrested Bilby for the offense.
The defense wanted Jordan to testify that the prosecutor violated Ohio Revised Code Section 2930.06 by failing to provide Jordan with notice of court proceedings against Bilby, and failing to tell her that the prosecutor had dismissed the case; Johnson, the victim's advocate, to testify that the prosecutor was properly informed of the victim's (Jordan's) desire to be kept informed of court proceedings, thereby obligating the prosecutor to keep Jordan informed; and Officer Beaver to testify that he was never informed that the prosecutor dismissed the charges against Bilby. Through the testimony of these individuals, the defense wished to create an issue of fact as to whether the government's handling of Plough's case was outrageous. The court excluded this testimony. The court also overruled a defense motion to instruct the jury on "outrageous governmental conduct."
Another issue on appeal is whether the State proved that in each of the LSD transactions Plough sold more than ten unit doses. The first LSD buy occurred on July 30, 1998, and was allegedly for fourteen unit doses. The second buy occurred on September 4, 1998, and was allegedly for twenty doses. The LSD sold was in "blotter" form, which is a sheet of paper that has been dipped in LSD, absorbing it. The paper is ingested. The State presented a chemist who testified as to the presence of LSD on the three pieces of paper that were purchased from Plough. The State also presented the testimony of Officer Blough, Frank Bilby, and another Drug Task Force officer, James Wagner ("Officer Wagner"), who was present at the second buy, to establish the quantities allegedly sold.
Officer Blough testified that LSD blotter paper is sometimes divided into grids indicating the unit doses. With respect to the first buy for fourteen unit doses, he testified that the paper had little indentations cut into it delineating the unit doses. He testified the strip of LSD paper they bought on July 30, 1998, had cuts indicating fourteen doses. Bilby testified that Plough represented it was fourteen doses and charged Bilby for the drugs accordingly ($55). The LSD purchased in the second buy, on September 4, 1998, did not have any physical markings on it indicating the number of unit doses, rather it was two blank strips of paper. Bilby testified that Plough told him he had twenty doses to sell. Officer Wagner, who was with Bilby when he purchased the drugs, also testified Plough represented there were twenty doses. Plough requested payment of $75 for the LSD. The transaction was tape-recorded and Plough could be heard to say there were "twenty." The tape was played for the jury. Also, Officer Blough testified that, based on his training and experience, what Plough sold was "two ten strips." The defense did not offer any testimony to counter the testimony or assertions made by the State with respect to the quantity of doses sold.
Plough received nine-month prison sentences on each of the LSD charges, to run concurrently. The minimum possible prison sentence for these fourth degree felonies was six months each. Plough had never previously been sentenced to prison. Plough has not provided this court with a transcript of the sentencing hearing; however, the trial court was provided with two sentencing memoranda from Plough and a sentencing memorandum from the State, which are part of the record. The court found that: there were five separate offenses which Plough committed over a nine month period; there was a reasonable probability of physical harm to the persons to whom the drugs were distributed; that Plough failed to acknowledge his pattern of drug and alcohol abuse until the sentencing hearing; and that, in light of past attempts by family and officials to rehabilitate him, the genuine seriousness of his admission and remorse was suspect. The court also noted that Plough had admitted prior similar offenses, for which he was not charged.
The court concluded that a sentence in excess of the statutory minimum of six months was necessary and appropriate to avoid demeaning the seriousness of the offenses, to protect the public, to punish Plough, and to impress upon him the seriousness of his problem and his offenses. Plough was sentenced to three six month terms, and two nine month terms, thirty-six months in total; however, all the terms were to run concurrently, for a total of nine months incarceration. From this judgment, Plough timely filed his notice of appeal, assigning the following errors:
 "[1.] The trial court erred by not sentencing the defendant, a first time offender, to the minimum sentence.
 "[2.] The trial court erred, to the prejudice of the defendant, by allowing the jury to consider whether the defendant sold more than ten unit doses of LSD.
 "[3.] The court erred, to the prejudice of the defendant, by not allowing defendant to present his 14th Amendment due process defense of outrageous governmental conduct."
While Plough has served his sentence, thus rendering the first assignment of error moot, we shall address it to emphasize the importance that proper procedure be followed in sentencing fourth and fifth degree felons, whose sentences may frequently be completed prior to an appellate ruling.
In his first assignment of error, Plough argues that he should have been given the minimum sentence of six months incarceration on the LSD counts. Plough acknowledges that the court did make the appropriate findings in its judgment entry. Specifically, the court stated in its judgment entry that the minimum sentence would demean the seriousness of the offense and that a longer sentence was necessary to protect the public. Plough acknowledges that the court need only find one of those circumstances. The Court found both. Plough also acknowledges that the court is not required to explain the reasoning for its conclusion in the judgment entry.
Nevertheless, Plough argues that the record did not support either of these findings. Plough failed to provide this court with a transcript of the sentencing hearing, in accordance with App.R. 9(B). When an appellant fails to provide a complete and proper transcript, a reviewing court has no choice but to presume the regularity of the proceedings in the trial court. State v. Simpfendorfer (Oct. 22, 1999), Geauga App. Nos. 98-G-2180 and 98-G-2181, unreported. Regardless of that, Plough argues his sentence was not supported by the record.
Under R.C. 2953.08(G)(1)(a), a reviewing court may modify a felony sentence if it finds by clear and convincing evidence that the record does not support the sentence.
In one line of argument, Plough contends that the court was required to consider the factors set forth in R.C. 2929.13(B), and failed to do so. These factors are used to help determine whether a fourth or fifth degree felon should receive a community control sanction, a combination of sanctions, or a prison term. However, R.C. 2929.13(E) exempts certain offenses from consideration under that subdivision. R.C.2525.03(C)(5)(c), trafficking in LSD, establishes a presumption in favor of prison for those guilty of its violation. Consequently, under R.C. 2929.13(E), a sentencing court should apply 2929.13(D) in determining the sentence, and not R.C. 2929.13(B) as Plough asserts. In this case, the consideration of the factors in R.C. 2929.13(B) was not required, and the trial court did not err by not considering them.
In its judgment entry, the trial court found that giving Plough the minimum sentence would demean the seriousness of the offense. Plough argues that this was error because none of the eight factors listed in R.C. 2929.12(B), which indicate the seriousness of an offense, are present in this case. Assuming, arguendo, that none of those factors were present, R.C. 2929.12(B) indicates that the court may consider any other relevant factors. The factors listed are non-exclusive. In the absence of a transcript of the proceedings, we cannot discern whether the court found any of the listed factors, or considered other relevant factors, but we must presume the regularity of the proceedings.
Also, while the court must consider the factors listed in R.C. 2929.12(B) and (C), R.C. 2929.12(A) reposes with the court the discretion to determine the most effective way to comply with the purposes and principles of sentencing as set forth in R.C. 2929.11. The two overriding purposes of felony sentencing are to protect the public from future crime by the offender and to punish the offender.
Addressing the first purpose, the court found that Plough had committed five separate offenses over a nine month period and that a sentence longer than the statutory minimum was necessary to impress upon Plough both the seriousness of his drug problem and the seriousness of dealing in drugs. In addition to the crimes for which he was convicted, it is apparent from the record and from Plough's own admission that he was a drug dealer who had committed more offenses than those charged. It is clear from the record that Plough engaged in criminal activity for a significant period of time before he was investigated and apprehended. Therefore, a longer sentence was appropriate to protect the public from this pattern of criminal behavior. Plough's argument that the protection afforded by an additional three months incarceration is negligible, and thus should not have been imposed, is of no avail. One cannot be heard to complain about the impropriety of a shorter sentence on the grounds that only a longer sentence would provide the public with worthwhile protection.
Addressing the second purpose of felony sentencing, the court stated that part of its intent in sentencing was to punish the offender. This is consistent with the purposes of felony sentencing. Finally, while Plough was actually sentenced to thirty-six months for five distinct offenses, he was only required to serve nine months, one quarter of the time imposed. Appellant has failed to show, by clear and convincing evidence, that the record does not support the sentence. Plough's first assignment of error is without merit.
In Plough's second assignment of error he contends that the trial court erred in allowing the jury to consider whether he sold more than ten unit doses of LSD in either of the transactions for which he was convicted. If the State could not prove he sold more than ten unit doses, his remedy would have been to have the charge reduced from a fourth degree felony to a fifth degree felony.
While Plough does not specifically state his theory, he argues there was insufficient evidence to submit to the jury the issue of whether he sold more than ten unit doses of LSD. At trial, Plough did not offer any evidence relevant to the quantities of LSD sold. Plough made a general Crim.R. 29 motion at the close of the State's evidence and renewed it at the close of all evidence, thereby preserving the issue for appeal.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 107, 99 S.Ct. 2781,61 L.Ed. 560, followed.)" State v Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 292, paragraph two of syllabus.
Plough's argument is predicated on the assumption that the BCI lab chemist, who testified for the State, was the only witness for the State on the issue of quantity. This premise is incorrect. While the Chemist did not testify to the quantity, the State presented three other witnesses who did. With respect to the first sale, Officer Blough testified that the markings on the sheet of LSD indicated fourteen unit doses. He described the significance of the marks to the jury. This was physical evidence which the jury was able to observe. The jury also heard the testimony of Bilby regarding the quantity of doses which Plough represented he was selling, and the corresponding price that was paid.
With regard to the second transaction, the two sheets of LSD sold did not have physical markings on them indicating the number of unit doses. To establish the quantity, Bilby and Officer Wagner testified that Plough told them he was selling them twenty unit doses. They testified to the corresponding price Plough charged. The jury heard an audio-tape of the transaction on which Plough indicated it was twenty doses. Additionally, Officer Blough testified that, based on his training and experience with street drugs, he concluded Plough sold "two ten sheets" of LSD. Finally, the LSD was entered into evidence. The jury had the opportunity to compare the first sheet purchased, which was marked, with the two sheets purchased in the second buy. Thus, there was sufficient evidence on both charges to submit the issue to the jury. Plough's second assignment of error is without merit.
In his third assignment of error, Plough argues that the court erred by not allowing him to present his defense of outrageous government conduct. Specifically, he objects to the fact that three witnesses were not allowed to testify in support of this defense. This testimony was not probative of anything the police did directly to Plough, rather, it related to the treatment the police gave their confidential informant (Bilby) to enlist his aid, and as a reward for his assistance.
Plough contended that the prosecutor violated the law by not meeting the statutory requirements to keep the victim of Bilby's offenses informed regarding the processing and disposition of those charges. Plough also argued, in effect, that Bilby was a worse offender than he, and that it was outrageous to relieve Bilby of responsibility for his offenses simply to apprehend a small-time drug dealer. Plough argued that the combination of these two facts created a factual predicate for the "outrageous governmental conduct" defense, and that the issue should have been submitted to the jury.
In a footnote in State v. Doran (1983), 5 Ohio St.3d 187, 192,449 N.E.2d 1295, fn. 4, the Supreme Court of Ohio, citing Rochin v.California (1952), 342 U.S. 165, set forth the proposition that "an accused may put the conduct of the police or their agent into issue by arguing that such conduct was so outrageous as to violate due process."Id. at fn. 4. The contours of a due process defense were set forth inRochin, wherein the Court stated the following:
 "Regard for the requirements of the Due Process Clause `inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings [resulting in a conviction] in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.' Malinski v. New York
[(1945), 324 U.S. 401,] 416-417. These standards of justice are not authoritatively formulated anywhere as though they were specifics. Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are `so rooted in the traditions and conscience of our people as to be ranked as fundamental,' Snyder v. Massachusetts
[(1934)], 291 U.S. 97, 105, or are `implicit in the concept of ordered liberty.' Palko v. Connecticut
[(1937)], 302 U.S. 319, 325, fn. 2." Rochin at 169.
In Rochin, law enforcement officers, relying on information that Rochin was selling narcotics, broke into the Rochins' home. Rochin was sitting on the edge of his bed, partially dressed, when the police entered his bedroom. His wife was lying on the bed next to him. An officer saw two pills on the nightstand and asked "[w]ho's stuff is this?" Rochin picked up the pills and swallowed them. A struggle ensued during which three officers attempted to force him to cough up the pills by jumping on his stomach. When that failed, they took him to a hospital where an emetic solution was forced into his stomach through a tube, inducing him to vomit up the pills. The pills contained morphine. At Rochin's trial, the pills were admitted into evidence, leading to his conviction.
In Rochin , the California District Court of Appeals concluded that the officers were guilty of breaking and entering, assault and battery, torture, and false imprisonment. However, based on current California precedent, the court declined to reverse the conviction. The United States Supreme Court concluded that the Fourteenth Amendment Due Process Clause prohibited the methods used by the police to convict Rochin, stating that this was conduct that shocks the conscience. Rochin,supra, at 172. Thus, in order for the conduct of the government to rise to the level where the principle of due process would bar prosecution, the conduct of the government would have to be so outrageous that it was shocking to the conscience. Id. The Court noted that while the due process clause itself provides little guidance, it would prohibit convictions that were brought about by methods that offend a sense of justice. Id. at 168-172
The question presented by this appeal is whether the defense of outrageous governmental conduct presents a question of fact that must be submitted to the jury, or whether, at least initially, it presents a question of law to be decided by the court. The Supreme Court of Ohio has not addressed this issue. In Doran, supra, the court indicated, without further explanation, that it considered the "due process" defense to be analytically distinct from the defense of entrapment. Doran at fn. 4. Thus, while Doran established that a defendant may put the police conduct in issue, it did not address the question presented in the instant matter.
In part, the difference between entrapment and a due process violation is that due process, in and of itself, is a constitutional right. In contrast, entrapment is characterized as an affirmative defense under R.C. 2901.05(C)(2). Doran, second paragraph of syllabus. Thus, entrapment is a statutory defense. As such, it raises questions of fact to be determined by a jury. But constitutional rights, and questions of their violation, present issues that have traditionally been resolved by courts as a matter of law. For example, the requirement of a warrant, the requirement of probable cause, the prohibition against double jeopardy, the rights against self-incrimination, the right to a speedy trial, the right to an impartial jury, the right of confrontation, the right of notice of the charges, the right to counsel, the right to reasonable bail, the right against cruel and unusual punishment, and, traditionally, the right to due process, all present issues which, in the event of their alleged violation, are resolved by courts as a matter of law. None of these questions are submitted to a jury.
Plough cites State v. Marsh (June 29, 1989), Franklin App. No. 88AP-680, unreported, for the proposition that the question of outrageous governmental conduct is a question of fact to be decided by the jury. The court's opinion, in fact, primarily addressed the issues related to the defense of entrapment. Defense counsel presented the due process issue to the court as a matter of law, requesting an acquittal in a Crim.R. 29 motion on the grounds that the conduct of the arresting officer in that case violated his clients right to due process. The Tenth District Court of Appeals upheld he trial court's denial of that motion, stating only that:
 "Although the trial court erred in failing to charge on entrapment, the evidence does not require a finding that the police acted improperly much less that their conduct was outrageous and reprehensible. At best
for defendant, this was an issue of fact for the jury and the trial court properly overruled the Civ.R. 29 motion." (Emphasis added.)
Thus, the court in Marsh concluded that the defense did not apply, and, without any analysis, stated that it may be an issue for the jury. In contrast, in State v. Feltner (Aug. 16, 1989), Miami App. No. 88-CA-34, unreported, the court conducted a review and analysis of the case law as it has developed concerning the defense of outrageous governmental conduct. The court concluded that the defense is of the nature of a constitutional violation, not an affirmative defense derived from statutory law, and as such, did not present a question of fact for the jury, rather, it presented a question of law for the court. Id. Therefore, the court concluded, the defendant was not entitled to a jury instruction on the defense of outrageous governmental conduct.
We agree with the resolution reached by the Second District Court of Appeals in Feltner. The defense of "outrageous governmental conduct", as it presents a claim that the defendant's constitutional right to due process has been violated, presents a question of law to be resolved by the court. Therefore, the trial court did not err in declining to allow the issue to be presented to the jury. Furthermore, in the case subjudice, nothing in the conduct of the police or prosecutor was so shocking to the conscience or so offensive to a sense of justice that it violated Plough's right to due process. Plough's third assignment of error is without merit. We would note that, analytically speaking, because a finding of outrageous governmental conduct that violates due process would serve as a bar to prosecution in the matter, the appropriate time and manner to raise the issue would be in a pre-trial motion to dismiss.
The judgment of the trial court is affirmed.
 ___________________________________ JUDGE ROBERT A. NADER
FORD, P.J., concurs, O'NEILL, J., dissents with dissenting opinion.